### IN THE

# SURROGATES' COURTS

### OF THE

## STATE OF NEW YORK.

---

HERKIMER COUNTY.—HON. AMOS H. PRESCOTT, SURROGATE.—AUGUST, 1869.

### SANDERS *v.* STILES.

*In the matter of the Probate of the last will and testament of* ORTON STILES, *deceased.*

The testator, in his last sickness, very feeble and unconscious unless aroused, sent for a neighbor to draw his will, and stated that he wished all his property to go to his sister (who lived with him as housekeeper) and her son a lad of thirteen. The neighbor drew the will, omitting (by mistake, he testified) to provide for the lad, and then read the will to testator, who was aroused for the purpose and approved it after it was read, and directed the draftsman to sign for him. Without further formality, the draftsman did so, and added his own name as subscribing witness, and requested the lad to subscribe as the second witness which he did; but there was no evidence that the testator was conscious of this request or of the acts of signing. *Held* not a valid execution :[*]

THIS was a proceeding for the probate of the last will and testament of Orton Stiles deceased. The facts upon which the decision turns are detailed in the opinion.

S. EARLE, *Attorney for the proponent of the will.*

F. S. WILCOX, *opposed.*

---

[*] Compare *Norton* v. *Norton,* and *Matter of Stewart, post.*

THE SURROGATE.—The will propounded for probate as the will of Orton Stiles deceased was executed under very peculiar circumstances; he was a man always of feeble intellect, and for quite a long time prior to his death, sick and wasting away by a slow and lingering disease, the consumption. He made no effort however to make a will until the very night of his death. He was residing at the time of his death with the sole legatee named in the will, his sister, Roxana Sanders. He lived in his own house, but his said sister was the housekeeper. I have no doubt but that according to the adjudged cases the testator had sufficient mental capacity to make a valid will, provided it was done under favorable circumstances, the party drawing the same taking great pains to ascertain and carry out his wishes. The testator lived only about an hour after the will was drawn. He selected a neighbor, Clark F. Babcock, to draw the will, who arrived at the testator's house for that purpose about dark on the day of his death. As soon as Babcock arrived, he inquired of the testator what he wanted, and after hearing; he asked how he wanted his property to go, and the testator replied he wanted Roxy (Mrs Sanders) and Melville to have it. Melville is a nephew of the testator, and a son of Mrs. Sanders and is a boy thirteen years of age. At the time Babcock arrived, the testator was sleeping, and was awakened by Babcock for the purpose aforesaid. Babcock immediately commenced writing the will, and was engaged at it for the space of over an hour, during which time the testator was on the bed and was sleeping the most of the time. He was very low and feeble, and inclined to sleep, and evidently paid no attention to what was going on, except when he was aroused.

After the will was written by Babcock, according

to the proof on the part of the proponent, it was read over to the testator, and he was asked if it was all right, and he said it was just as he wanted it. Babcock then asked him if he (Babcock) should sign his name and be a witness to the will, and he said yes. The testator, according to the testimony of Babcock, at this time was very weak, and was unable to sign his name. Roxana Sanders, her son Melville, and Patrick Kiton, were the only persons with the testator at this time.

After the will had been read and approved, as herein stated, and Babcock had received directions to sign the testator's name, he went to the table and did so, and also signed his own name as a witness; and at the same time the boy Melville Sanders, at the request of Babcock, also signed his name to the attestation clause of the will, as a witness. Whether the testator was sleeping or not, or paid any attention to the signing, does not appear. No one swears that he did, but all the testimony shows that during most of the time he was sleeping, and apparently was all the while unconscious of what was going on, unless an especial effort was made to arouse him, and there is no evidence from any one that anything of that kind was done after the will had been read; and I think it is evident from the testimony, that except on the occasion aforesaid, when the will was read and the direction given to Babcock to sign his name, the testator did not pay any attention to what was going on, and that he was so weak and low that he was wholly unable to do so. Babcock swears that he told the testator that if he signed his (testator's) name to the will he should have to be a witness to the will, and the testator said he wanted him to be a witness. The will was not shown to the testator in any manner after his signature was placed to it by Babcock, the attestation

clause was not read to him after it had been executed, and he never in any manner acknowledged it to be his will, or stated it to be his will, after his name was put to it in·the manner aforesaid ; and indeed there is no evidence on the part of the proponent of the will that the testator ever knew or was at any time conscious of the fact that his name had been subscribed to the will.

Melville Sanders, the boy, 13 years of age, signed the will as a witness, at the request of Babcock, and he swears that no other person asked him to sign it, and no one else said anything to him about being a witness, and that the testator did no act and said nothing by which he in any manner indicated to him that he expected to have him or wanted him to be a witness to the will. The subscribing witness, Melville Sanders, was unable to say that the testator ever heard Babcock say that there must be two witnesses to the will. Babcock does not testify that the testator heard him when he said that Melville could be a witness to the will. The testator, according to Babcock's evidence, said nothing when the suggestion was made ; he made no assent ; and I think the fair presumption from the evidence is that he knew nothing about it.

In ordinary cases this boy would not have been asked to be a witness ; his age, and the relations that existed between him and the only legatee, would have been regarded as objections of sufficient importance in the mind of almost any prudent man, so that some one else would have been selected. It is also proper to remark, that on the first hearing, when Babcock was sworn, and after he had fully related all that he then remembered, and his evidence was closed, he had not said a word about his having stated, at any time, that Melville could be a witness. He was recalled and gave the additional evidence on the adjourned day.

But there is another extraordinary circumstance connected with the execution of this will. All of the witnesses for the proponent who were present at the time the will was executed swear that the testator told Babcock, in answer to the inquiry as to how he wanted his property to go, that he wanted Roxy and Melville to have it. Babcock testifies as follows: "I forgot to put in the boy's name into the will; that is the only reason that I did not put it in." It is then quite clear the paper propounded is not the will that the testator intended to make. He evidently did not understand it, or know what he was doing when he said it suited him ; he evidently did not notice the alteration. He had said nothing indicating any change of intention; no reason was given why the change from the instructions given had been made ; Babcock says he forgot all about the instructions, and that is the only reason why the will is not in accordance with the testator's directions. In other words, if the estate had been devised to the two, it would have been all right, but inasmuch as ne forgot the instructions, and drew the will entirely different from the instructions, still it is claimed that it is the testator's will, and that he understood it, and that it should be sustained as a valid will.

From all the evidence in the case, I have come to the conclusion that the testator, at the time of the execution of the will, did not know and was not able to understand enough about the business to know what he was doing. I have come to the following conclusions:

*First.*—That the paper propounded as the last will and testament of Orton Stiles, deceased, was not at any time subscribed by the testator, and also that said paper is not his will.

*Second.*—That no subscription was ever made to said will by the testator in the presence of each of the wit-

nesses thereto, or acknowledged by him to have been so made to each of the attesting witnesses thereto.

*Third.*—That the said testator never did at any time, in any manner, declare the said instrument to be his last will and testament, or by any act or word indicate it to be his last will and testament, in the manner required by law in order to make it a valid will.

*Fourth.*—There is not sufficient evidence that each of the attesting witnesses were requested by the testator to sign the will as witnesses.

Decree accordingly.