## COWAN et al. v. SHAVER et al., Appellants.

**Division One, June 19, 1906.**

1. **WILL CONTEST: Conspiracy: Motive: Will of Devisee.** Where the testator, seventy-five years old, possessed of $10,000, gave each of his nine children $30 and the balance of the property to his wife, and she soon afterwards made a will by which she left all her property to one daughter, and died, it is competent in a suit to set aside his will, to admit her will in evidence as tending to show the result of an alleged conspiracy between that daughter and her husband and father-in-law, who was the testatrix's brother, to direct the property into the daughter's family. It showed motive for the conspiracy by showing how in fact the result was worked out.

2. ———: **Burden on Proponents.** The burden is on the proponents to prove the due execution of the will and that testator had mental capacity to know and understand what he was doing. That burden they must assume, even though contestants introduce no evidence, and even though they abandon the contest. But the proponents are not required to prove a negative; for example, they are not required to prove that there was no fraud or undue influence exerted.

3. ———: ———: **Statement of Testator: His Understanding of the Will.** The will gave the testator's nine children $30 each, and the balance of his property, amounting to nearly $10,000, to his wife. *Held,* that there being sufficient evidence offered by proponents themselves that the testator understood at the time the will was made that he was giving his property to his wife for life and that after her death it would go in equal parts to his children, the court properly told the jury that if such was his understanding the paper was not his will.

4. ———: **Scrivener's Understanding: Interpretation of Testator's Words.** It is immaterial whether or not the scrivener thought that the will he drew expressed the testator's purposes and wishes. If the testator told him to draw it one way and he drew it another, and testator signed it under the belief that it was written as he had directed, it is not his will.

5. ———: **Incapacity: Undue Influence: Imposition.** Where a feeble old man, illiterate, surrounded by those instrumental in bringing the will about and who shared most from its provisions, thought he was signing a will which gave his property to his wife for life and to his children equally at her death,

whereas it gave it to her absolutely, then, whether the act was the result of a diseased mind, or of a feeble mind imposed upon, the paper he signed was not his will, and the court properly so instructed the jury.

6. ———: ———: ———: **Feebleness..** Mere feebleness of mind and body are not alone sufficient to avoid a will, but they are facts to be considered when its validity is on trial, and they are to be considered with especial reference to the facts of the particular case.

7. ———: **Attestation: In Presence of Testator.** The statute expressly requires the will to be subscribed by the witnesses in the presence of the testator.

Appeal from Sullivan Circuit Court.—*Hon Jno. P. Butler,* Judge.

AFFIRMED.

*N. A. Franklin, B. L. Robison* and *Jno. W. Bingham* for appellants.

(1) The court erred in admitting in evidence the will of Polly Cowan. No disposition she could make of the property bequeathed to her could in any way affect the validity of the will of John Cowan. Wood v. Carpenter, 166 Mo. 485; Schierbaum v. Schemme, 157 Mo. 19; Von de Veld v. Judy, 143 Mo. 368; King v. Gibson, 191 Mo. 307. (2) The court erred in admitting the testimony of William and Susan Cowan as to the disposition the deceased said he had made of his property in his last will. Such statements before and after the execution of the will are competent as external manifestations of his mental condition, and of the state of his affections, and not as evidence of the truth of the facts stated. But in the case at bar the deceased's statements were made the basis of plaintiff's instruction 1, which told the jury in effect that if they believed from the evidence that deceased thought he had made a disposition of his property other than what he had, then the finding must be against the will. Crowson v.

Crowson, 172 Mo. 703; Rule v. Maupin, 84 Mo. 587; Tibbe v. Kamp, 154 Mo. 579; Thompson v. Ish, 99 Mo. 160; Schierbaum v. Schemme, 157 Mo. 1.    (3) There was no evidence that the deceased, John Cowan, was not of sound mind and it was error in the trial court to submit that issue to the jury.    McFadin v. Catron, 138 Mo. 225; Tibbe v. Kamp, 154 Mo. 579; Martin v. Bowdern, 158 Mo. 379; Berberet v. Berberet, 131 Mo. 399; Schierbaum v. Schemme, 157 Mo. 1; Wood v. Carpenter, 166 Mo. 465; Story v. Story, 188 Mo. 110; Hughes v. Rader, 183 Mo. 630.    (4) The court erred in refusing the defendants' instruction 1. Wood v. Carpenter, 166 Mo. 485; Schierbaum v. Schemme, 157 Mo. 19; Von de Veld v. Judy, 143 Mo. 368; King v. Gilson, 191 Mo. 307. (5) The court erred in refusing defendants' instructions 2, 3 and 4, and each of them. There was no testimony that rises to the dignity of evidence that either Polly Cowan, Pinky Shaver or John W. Shaver attempted in any way to influence the deceased in making a will. On the other hand, it is shown by the contestants themselves that whenever Polly Cowan spoke of her husband's making a will she insisted that it be made as he wanted it, and she specifically told him, according to the testimony of George W. Cowan, that if it was not made as he wanted it, the will could be set aside. These are the only words she is known to have uttered in any way about the will; and Pinky Shaver is not shown to have ever said one word to her father in regard to a will.    Norton v. Paxton, 110 Mo. 456; Wood v. Carpenter, 166 Mo. 465; Kischman v. Scott, 166 Mo. 214; McFadin v. Catron, 138 Mo. 197; Campbell v. Carlisle, 162 Mo. 634; Sehr v. Lindemann, 153 Mo. 276; Crossan v. Crossan, 172 Mo. 691; Thompson v. Ish, 99 Mo. 160; Tibbe v. Kamp, 154 Mo. 545; Story v. Story, 188 Mo. 110.    (6) The court erred in giving plaintiff's instruction 2.    There is no evidence that either John Shaver, Polly Cowan or Pinky Shaver exercised any controlling influence over the mind of John Cowan which

induced him to make or execute the will in question, but the instruction is broader than the petition in that the instruction authorized the jury to find against the will, "if John Shaver, Pinky Shaver, Polly Cowan, or either of them, or any other person or persons in their behalf, or in behalf of either of them, by persuasion, importunity or any other device or machination controlled, directed, restrained or coerced the will, or confused the mind of the alleged testator, John Cowan, or confused or overcome his power of judgment in the execution of the paper writing read in evidence as and for his last will and testament, so that said instrument does not express the will, wish or desire of said testator in the disposition of his property, then and in that event your verdict should be for plaintiffs." Story v. Story, 188 Mo. 110.

*Calfee & Eubanks* and *J. C. McKinley* for respondents.

(1)  The will of Polly Cowan was competent to show the carrying out of the original design of John Shaver, Pinky Shaver and Polly Cowan to get the property out of the Cowan and into the Shaver family. It was, to say the least, a strong circumstance to be considered by the jury along with other facts and circumstances. (2) Statements of deceased before and after executing the instrument as to what disposition he intended to make and had made of his property are competent to show his mental condition and state of his affections. In other words, who were the objects of his bounty and what he thought of doing or had done for them. Rule v. Maupin, 84 Mo. 587; Thompson v. Ish, 99 Mo. 170. (3) In Missouri a will contest is an action at law, and the Supreme Court will not weigh conflicting evidence to determine whether the jury found against the weight of the evidence, but will only examine the record to see if there is any testimony to sup-

port the verdict.   Sayre v. Princeton University, 192 Mo. 95; Schoff v. Peters, 111 Mo. App. 459; Roberts v. Bartlett, 190 Mo. 680; Crossan v. Crossan, 169 Mo. 631. (4)   Where there is any substantial evidence that the testator was not of a disposing mind and memory at the time of the execution of the will, the case should go to the jury.   Crossan v. Crossan, 169 Mo. 631; Fulbright v. Perry County, 145 Mo. 432; Southworth v. Southworth, 173 Mo. 59.   (5) Where there is any substantial evidence upon which a verdict setting aside a will, as being the result of undue influence, can rest, the case is one for the jury.   Tibbe v. Kamp, 154 Mo. 545; Southworth v. Southworth, 173 Mo. 59; Bradford v. Blossom, 190 Mo. 110.   (6) Undue influence is a question of fact and, like other questions of fraud and bad faith, can rarely be proved by direct and positive evidence, but may be established by facts and circumstances, and upon grounds of public policy the doctrine of courts of equity has been adopted by courts of law in will contests.   Dausman v. Rankin, 189 Mo. 677; Cash v. Lust, 142 Mo. 630; Bradford v. Blossom, 190 Mo. 110.   (7) A testator must have sufficient understanding to comprehend the nature of the transaction in which he is engaged, the nature and extent of his property, and to whom he desires to give it, and must give it without the aid of any other person.   Sayre v. Princeton University, 192 Mo. 95.   (8) In a will contest, where the verdict is clearly for the right party, it is wholly immaterial if error occurs in the instructions. Von de Veld v. Judy, 143 Mo. 348.   (9) In a suit to contest a will, where the evidence shows that the will would not have been made by deceased but for the influence exercised over his mind and will, the jury should find that the will was procured by undue influence.   Harvey v. Sullens, 46 Mo. 147.   (10) Ordinarily the burden of showing undue influence, in a suit to set aside a will, is on the plaintiff; but where confidential or fiduciary relations exist, or some pecuniary benefit

is to be derived directly or indirectly the rule is changed. Bradford v. Blossom, 190 Mo. 110; Barkley v. Cemetery Assn., 153 Mo. 300; Tibbe v. Kamp, 154 Mo. 545; Harvey v. Sullens, 46 Mo. 147; Dausman v. Rankin, 189 Mo. 677.

VALLIANT, J.—This is a contest over a paper writing purporting to be the last will and testament of John Cowan, deceased, who died in Sullivan county in May, 1902, leaving surviving him his wife, Polly Cowan, and seven sons and two daughters, and leaving also real and personal estate to the value of about $10,000. By the will in question the testator gives to each of his children the sum of $30, and the balance of his property to his wife, who was also named as sole executrix without bond. The will was admitted to probate and the widow qualified as executrix, but she died and letters of administration d. b. n., c. t. a., were issued in May, 1903, to Henry F. Cowan, a son of the testator.

The widow, Polly Cowan, left a will by which she gave the principal part of the estate to her daughter Pinky Shaver. The plaintiffs in this suit are the sons and one of the daughters of the testator; the defendants are the other daughter, Pinky Shaver, and the minor children of a deceased daughter, for whom a guardian *ad litem* was duly appointed and answer filed.

The petition alleges that John Cowan was not of sound mind when he executed the alleged will and that it was obtained by the exercise of undue influence exerted by Polly Cowan, Pinky Shaver and John Shaver.

John Shaver was the brother of Polly Cowan, and his son married Pinky. The theory of the plaintiff is that John Shaver was the chief schemer and united with his sister Polly and his daughter-in-law Pinky to divert the property from the Cowans to the Shavers.

The testimony on the part of the plaintiffs tended to prove as follows:

John Cowan, the alleged testator, was about 75

years old when he died, and was quite feeble in body and mind. He had come to Missouri when he was a young man and settled in Putnam county, where he lived until about two years before his death, when he moved to Sullivan county. He was a farmer and had accumulated an estate worth about $10,000. Before he moved from Putnam county his children, who were all of mature years, the eldest being 51 years old, had all left the paternal home and established homes of their own. He had been, even in his old age, a vigorous man in mind and body until a few years before his death, when his dwelling house was destroyed by fire and when, in his efforts to save his property from the flames, he received severe burns on his leg and his head from which he never recovered. One effect of the burns was a persistent, gangrenous sore which caused blood poisoning, a breaking down of his physical and mental strength.

He was unable to attend to his business and placed it in the hands of John Shaver, his wife's brother, who managed it for him until his death. John Shaver lived in the neighborhood into which the old man moved in Sullivan county and exercised control over most of his affairs. The testimony of two physicians who attended him, and that of members of his family, tended to show that his mind was not only weak but diseased, and that he had not sufficient mind and memory to understand the nature of the will he was attempting to make.

The testimony also tended to show that John Shaver into whose hands he had placed his business affairs was the active agent in bringing about the execution of this document. He had been urging the testator for some months to make a will, and this paper was executed in Shaver's house.

The circumstances show that there had been an arrangement made in advance, by whom it is not expressly shown, for the execution of this paper. On

197 Sup.—14

the morning of its execution the old man was driven in a vehicle with his wife and daughter, Pinky Shaver, to the residence of John Shaver, where a man to draw the will had been requested to come and two men to witness it. It does not expressly appear who requested these men to attend at John Shaver's house on that morning for that purpose, but it appears that Pinky's husband, who was John Shaver's son, was the messenger who was sent to ask the man who wrote the will to come. This man was a farmer and had also sometimes taught school. He had never written a will before, and did not know what he was called to go to John Shaver's house on that occasion for until he got there. When informed of what he was expected to do he asked for a form and John Shaver gave him a form, just how far this document conforms to that form does not appear. The writer of the will, who was a witness for defendants, testified that he wrote it at the dictation of the testator, but both he and another one of the subscribing witnesses, who was also a witness for defendants, were under the impression that the testator had expressed the purpose to give the property to his wife for life and to his children equally at her death. While the will was being written John Shaver came in to give the form; once the testator's wife was called, when he could not remember the names of some of the children.

On the part of the defendants the testimony tended to show that John Cowan was of sound and disposing mind and memory when he executed the will and that it was his own free act uninfluenced by John Shaver or any one else. Also that Pinky had lived with her father, nursed and tended him in his affliction, and devoted her life to his service.

The cause was submitted to the jury under instructions, some of which are assigned as error and will be considered in their order. There was a verdict that the paper writing in question was not the will of John

Cowan, deceased, and from the judgment on that verdict the defendants appeal.

I. Appellants' first point is that the court erred in admitting over their objection the will of Polly Cowan in evidence.

The will was admissible in evidence as tending to show the result of the alleged conspiracy of John Shaver and his sister and daughter-in-law to divert the property into the Shaver branch of the family. Showing a motive for the conspiracy by showing how in fact the result was worked out. There was no error in admitting that will in evidence.

II. William Cowan and Susan his wife, being unable to attend the trial, a written statement of what their testimony would be was offered by the plaintiffs which it was agreed might be read as what their evidence would be if they were present, but defendants objected to the comeptency of the same. The testimony was to the effect that the witnesses heard John Cowan say, referring to the will now in question, "that he had fixed it so his property would go to his wife, Polly Cowan, as long as she lived, and then it was to be equally divided between his children."

Appellants in their brief say that this was competent evidence to show the testator's mental condition and affections, but they complain that it was made the basis for instruction numbered 1 given for the plaintiffs, the closing sentence of which was: "If he (John Cowan) signed the will in question with the understanding and belief that such will conveyed only a life estate to his wife, Polly Cowan, with the remainder to his children in equal parts, then the will offered is not his will and you should so find." Of that instruction the appellants say it broadens the issues made by the pleadings and allows the oral statements of the testator made after the execution of the will to contradict its terms.

A will contest has its peculiar features. It comes after the will has been formally admitted to probate in the probate court, and it has the effect to throw upon those who assert the will the burden of proving it in the circuit court. The plaintiffs or contestants in such case may not introduce any evidence at all, they may even expressly abandon the contest, still the burden of proving the will devolves on those who would maintain it; they must prove that it was executed as the law requires and that the testator had mental capacity to know and understand what he was doing. The proponents are not required to prove a negative, for example, they are not required to prove that there was no fraud or undue influence exerted, but they are required to prove every affirmative fact that is essential to the execution of a valid will, even though the contestants offer no evidence at all.

If, therefore, in their effort to prove the due execution of the will, the proponents themselves show that the paper offered is not what the testator was made to believe it was when he signed it, it cannot be adjudged to be his will, even in the absence of any averment to that effect in the petition of the contestants. The ultimate question in the case is, is this the last will and testament of the alleged testator? and the affirmative of that issue is on the proponents.

Independent of the evidence of William and Susan Cowan, there was sufficient in the evidence introduced by the proponents themselves to justify the court in submitting to the jury the question contained in this instruction. The man who wrote the will and witnessed it and one of the other subscribing witnesses said they understood the testator to say in effect that he wanted the property to go to his wife for life and to his children equally after her death. That wish is at such variance with the terms of the alleged will that it is a strong circumstance going to show that the man did not comprehend the effect of the instrument he was sign-

ing. Mere feebleness of body and mind are not alone sufficient to avoid a will, but they are facts to be considered when the question of the validity is on trial, and they are to be considered with especial reference to the facts of the particular case. Here was an old man conceded to be feeble in body and mind, in the keeping, as it were, of his trusted business agent, his own wife and his own daughter, illiterate, with no one present to advise him except those who were instrumental in bringing about the execution of this paper. Under those circumstances if he thought he was signing a will that gave the property to his wife for life and to his children equally at her death, then whether the act was the result of a diseased mind, or of a feeble mind imposed upon, the result in law was the same, the paper he did sign was not his will and the court was right in so instructing the jury.

A verdict against the will on that issue does not necessarily mean that the scrivener was guilty of fraud. He was a novice in the business of writing wills, this was his first attempt, he called for a form and followed it, he knew that the wife of the testator was also the mother of all the children and he may have thought that the giving of the property to her was but the establishment of one stage in its devolution and that at her death it would descend to the children all alike. But it is immaterial what the scrivner thought about it, if the illiterate, feeble old man told him to write it one way and he wrote it another, and it was signed under the belief that it was written as he directed, it is not his will. The court committed no error in that instruction.

III. The case was given to the jury under instructions that authorized a verdict that the paper in question was not the will of John Cowan deceased if the jury should find that he was of unsound mind at the time of its execution or that it was obtained by undue influence. Appellants insist that there was no evidence

on which to base those instructions. We think the evidence was sufficient to authorize the submission of the case to the jury on both those questions.

So far as the acts of the mother and daughter are concerned the evidence does not go much farther than to show their acquiescence in the purpose of John Shaver and their assistance in his efforts, but that is sufficient. They may have considered the fact that Pinky had lived with her father and nursed him and rendered more service to him in his affliction than the other children, and that she was therefore entitled to more than the rest and they may have been right in so thinking, but that would not justify them in the eyes of the law in doing what the evidence on the part of the plaintiffs tends to show that they did. There was no error in submitting those questions to the jury.

IV. Complaint is made of plaintiff's instruction numbered 3, because it is said that it implies that it is necessary that the subscribing witnesses should sign the will in the presence of the testator. If the instruction so implies it is entirely correct in that particular, because the statute expressly requires that the will "shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator." [Sec. 4604, R. S. 1899.]

V. The court at the request of the defendants gave twelve instructions in which the law bearing on the questions of mental capacity, undue influence and requisites to the execution of a will, was elaborately set out in a form as favorable to the defendants as they had the right to ask.

The court refused four instructions asked by defendants, the first of which would have withdrawn from the consideration of the jury the will of Polly Cowan, the second declared there was no evidence that John Shaver exercised any undue influence to cause John Cowan to make the will, the third that Polly Cowan

exercised no such influence, the fourth that Pinky did not do so and that the question of undue influence was withdrawn from the jury. From what has already been said there was no error in refusing those instructions.

The cause was fairly tried, there was substantial evidence to support the verdict and we find no error in the record.

The judgment is affirmed. All concur.