JOHNSON ET AL. v. RAMSEY ET AL.

*Wills—Valid although all of testator's wishes not expressed—
Scrivener omits legatee's name from item—Entire will not
invalidated, when.*

1. A purported will is invalid where it affirmatively disposes
   of property contrary to the wishes of its maker, but it
   is not invalid merely because it fails to express all of
   the testator's wishes.
2. The facts that a testator directed the scrivener to insert
   in his will an item disposing of his personal estate to a
   certain legatee, and that he believed that the will in-
   cluded such provision when he signed it, and that such
   item by omitting the name of the legatee was wholly
   ineffective, do not warrant an instruction that the will
   was in all respects invalid.

(Decided June 29, 1923.)

ERROR: Court of Appeals for Gallia county.

*Mr. R. M. Switzer*, for plaintiffs in error.
*Mr. H. W. Cherrington* and *Mr. Hollis C. John-
ston*, for defendants in error.

MAUCK, J. The plaintiffs brought their action
in the Common Pleas of Gallia county to contest
the will of Daniel Trichler, deceased. The trial
resulted in a verdict and judgment for the defend-
ants. To that judgment error is now prosecuted
to this court.

The testator was a bachelor, whose next of kin
consisted of his brother Philip, his sisters Barbara
Ramsey, Amanda Swisher and Julia Dean, and the
contestants, Sylvia Johnson and Gladys Caldwell,
who were the daughters of his predeceased brother,

Loman Trichler. The testator was the owner of one farm of fifty-two acres and another of ninety-two acres, and died possessed of some $1,500 of personal property. The will was drafted by Hiram E. Grover, in the presence of the testator and two of his friends, Alexander Lane and W. R. Viars. The will as executed reads as follows:

"1st. I hereby give and devise to Alfred Ramsey son of Albert Ramsey My farm on which i now reside, containing fifty-two (52) acres more or less, and described as follows, bounded on north by the lands of D. L. Davis and A. S. Darst on the east by the Ohio river and on the south by lands of Wm. Caufman on the west by lands of D. L. Davis, at my decease the said farm is to go to the said Alfred Ramsey, and at the death of the said Alfred Ramsey then the farm goes to his heirs.

"2d. I hereby give and devise to my brother and 3 sisters as follows Phillip Trichler, and Barbara Ramsey Amanda Swisher, and Julia Dean my farm situated north of Addison containing Ninety-two (92) acres more or less on which my brother Phillip Trichler now resides, the value of said farm to be divided equally between my brother and three sisters.

"3d. i give and devise all my personal that is left after the payment of all my just debts and charges which is to be paid out of my personal property.

"4th. by this will i hereby revoke all former wills.

"5th. I do hereby nominate and appoint H. E. Grover and Alexander Lane as Executors of this my last will and testament hereby empowering them to adjust and release all claims as they dem

proper, to acknowledge deeds and deliver in fee simple.

"6th. I desire that no appraisement and no sale of my Personal Property be made and that the Court of Probate direct the omission of the same in Pursuance of the Statute."

Some evidence was adduced upon the trial reflecting upon the testamentary capacity of Trichler, but none as to undue influence. The jury were amply warranted in finding that he had capacity to make the will in question.

The principal question at issue was whether or not the instrument quoted was actually the will of the testator, or whether it was something else which he was induced to sign through mistake or fraud of the scrivener. There is and can be no contention among counsel, that whatever the testator told the scrivener to put in the will, the will as written actually became his, if, knowing what the scrivener had actually written, he adopted it as his own and made it his by signing and acknowledging it.

The testimony tends to show that the first item of the will does not express the wish of the testator as he gave it to the scrivener before executing the will. But the testimony is clear that this item was read to him and that as read he adopted it and made it his.

A different situation arises when we come to consider the third item of the will. It is clear that the purpose of the testator was to make Alfred Ramsey the legatee under that item, and it is perfectly clear to us that when the testator signed the will he, the scrivener, and Lane and Viars, the witnesses, all thought that the name of Alfred

Ramsey was actually in the will as a legatee under item third.

The contestants claimed below, and claim here, that, from the fact that the third item of the will does not express the testamentary desire of Daniel Trichler, it follows that the will itself is not his, whether it be said that the omission of the proposed legatee's name was due to fraud or due to mistake. The contestants, at the trial, raised the question by asking the court before argument to charge the jury as follows:

"If the jury find from the evidence adduced that the paper writing referred to in the petition was drafted and written by Hiram E. Grover, and that said Hiram E. Grover was given directions by the testator therein named, Daniel Trichler, to so draw said writing as to give and bequeath his personal property remaining after the payment of his debts and certain charges therefrom, to his grand nephew, Alfred Ramsey, and that said Hiram E. Grover led the said Daniel Trichler to believe that said writing made disposition of his personal property as he had directed, and the said Daniel Trichler signed and executed said writing under the belief that the same disposed of his personal property as he had directed, and you further find that said paper writing contains no provision or language giving and bequeathing any personal property of the said Daniel Trichler to the said Alfred Ramsey, then you should return a verdict that the said paper writing is not the last will and testament of the said Daniel Trichler."

The trial court refused the requested instruction. To this the contestants excepted, and we are now met with the simple question whether or not

the failure of the scrivener to so draw the will as to give to Alfred Ramsey the bequest contemplated by item third, coupled with the fact that Trichler believed that the item in question did so dispose of his personal property, destroyed the whole tes· tamentary power of the instrument of which item third is a part.

The very statement of the proposition at once raises doubt of its soundness. It amounts to this: The testator desired a favorite to have certain lands and his personal property, but by mistake of the scrivener the favorite does not get the personal property. He is, therefore, also deprived of the real property. Or it might be put this way: It was the intention of the testator that the plaintiffs receive nothing from his estate. Because of the carelessness of the scrivener the testator died intestate as to some of his property, enabling the plaintiffs to share in the distribution. Hence because the testator did not succeed in his desire to eliminate them from participation in part of his estate, he must not be allowed to exclude them from other parts of his estate.

It seems clear that a principle resulting in such complete destruction of the testator's correctly expressed wishes should not be followed, unless some technical rule of law imperatively requires it, but it is claimed that such rule is found in the doctrine that a will is not a will where it violates the express directions of the testator, and that this principle is supported by authorities cited. In our opinion the cases referred to only go to the length of holding that a purported will is invalid where it affirmatively disposes of the property in a manner contrary to the wishes of the testator,

and that a different rule applies where it partly
succeeds and partly fails to express the testator's
wishes.   To illustrate: If a testator thought that
a paper expressed his will to give lots No. 1 and
No. 2 to John, and so signed it without reading it,
the paper would not be his will if the scrivener
by fraud or mistake so drafted the will as to give
John lots 1, 2 and 3.   This would be an affirmative
disposition of some of the testator's property con-
trary to his intentions and could not stand.   If, on
the other hand, the scrivener had under the same
circumstances correctly named John as the devisee,
but had mentioned lot No. 1 and had omitted lot
No. 2, the resulting will would not be an affirmative
disposition of his property contrary to the testa-
tor's intentions, but would be a partial expression
of his purposes.   Under such circumstances the
court could not make a will for the testator giving
to John lot No. 2, but no reason is apparent why
it should not make effective the testator's wishes
so far as they were legally expressed by carrying
out his devise as to lot No. 1.   In the instant case,
the facts are analogous to that of the testator who
has signed the will devising to John lot 1 only,
when he supposed that it devised both lots.   The
cases relied upon by the plaintiffs in error are
analogous to the former set of circumstances where
both lots are mentioned and also a third lot which
the testator did not mean to include.   Observe the
cases:

*Cowan v. Shaver*, 197 Mo., 203, 95 S. W., 200,
was a case where the Missouri court was reviewing
a judgment setting aside the will of John Cowan.
It had been shown that Cowan, old, weak, diseased
and illiterate, desired by his will to devise a life

estate to his wife, with remainder to his children. The will gave practically all the property absolutely to the wife. The trial court gave to the jury this instruction:

"If he signed the will in question with the understanding and belief that such will conveyed only a life estate to his wife, Polly Cowan, with the remainder to his children in equal parts, then the will offered is not his will, and you should so find."

This charge was approved by the Superior Court, but it is to be observed that the will gave more to the beneficiaries, not less, than the testator intended, and that it affirmatively bestowed upon the widow something which the testator did not intend her to have.

In *Waite* v. *Frisbie*, 45 Minn., 361, 47 N. W., 1069, the testatrix was *in extremis* when she expressed to a friend her desire to make a will and the disposition she wanted to make of her property. The friend informed the husband of the testatrix, who wrote out what he so understood to be his wife's wishes. The residuary clause was to the husband. The will thus prepared was then read, but the testatrix refused to sign it for reasons then indicated. A lawyer was called, who added a clause which was not read to testatrix, but which, she was assured, accomplished her purposes. With this assurance she signed. The Supreme Court of Minnesota found that the added clause "did not change in any way the legal effect of the instrument as it was when deceased declined to sign it."

The testatrix, having heard the original will read and having refused to sign it, did not assent to an exact equivalent of the repudiated will, which she thought was something different, but which, in

fact, was not different from the original. Thus, again, the husband was by mistake attempting to take *more* than testatrix purposed.

*Bradford* v. *Blossom*, 190 Mo., 110, 105 S. W., 289, is hardly helpful. The pertinent syllabus in that opinion reads:

"Where testatrix instructed B to have her will drawn, making a certain disposition of her property, and, without her knowledge, B procured *an entirely different will* to be drawn by his attorney, which testatrix executed without reading, discussion or explanation, there was neither mistake of law or fact in its execution so far as testatrix and B were concerned."

This will was invalid because entirely different from the testatrix's intentions, not in its omissions, but in its affirmative operations.

*In re Kempthorne's Estate*, 188 Ia., 70, 175 N. W., 857, was a case where an attempt was made to probate the will of Josiah Kempthorne. When the testator was on his death bed a will was prepared for him. His desire was that the divorced husband of his daughter participate in no way in the distribution of his estate. Now the divorced husband could not have participated had there been no will. From information given by the testator's wife to the scrivener the latter thought that the marriage relation of the daughter and her divorced husband still subsisted. With this in mind he drafted the will, placing in trust the share of the daughter during her life, with remainder over to her children, from whom, in case both mother and children died, the father (the divorced husband) might inherit the very property which the testator expressly desired that he never have. Under these circumstances the Supreme Court of Iowa held:

"Where the attorney who drew a will did not understand that testator's daughter was divorced; and included a clause which operated for the husband's benefit, the circumstances afforded a substantial obstacle to the probate of the will."

From the plaintiffs' brief we gather that *Sanders* v. *Stiles*, 2 Redf., 1, was another case where a legatee got all instead of the half of decedent's property, as intended by the decedent.

The remaining case cited, *Christman* v. *Roesch*, 116 N. Y. Supp., 348, involved the construction, not the execution, of a will, and contributes nothing to the principle under consideration.

We conclude, therefore, that none of the authorities urged upon us supports the proposition that because Daniel Trichler in a certain item of this instrument did not accomplish his will by disposing of his personal property as he thought he had he failed to dispose of his real property by other items of the instrument.

A decedent's property must pass to the successor in one of two ways, by will or by descent. Where an omission from the will occurs contrary to the intention of the decedent, his will is frustrated to the extent of such omission, but the property affected nevertheless is lawfully disposed of by the laws of descent and distribution, and the failure of the decedent's will in the one particular affords no reason for avoiding his will in other particulars. Where, as in the cases relied upon by the plaintiffs in error, the will as signed embraces affirmative dispositive provisions that are contrary to the decedent's intentions, the will, if sustained, would result in a disposition of the property neither by the decedent's will nor by the laws

of descent and distribution. The true rule in such a case as we are now considering is found in the language of an eminent author who thus discusses omissions made by a scrivener:

"Although through some important omission of this kind, the whole scope and bearing of the testamentary provisions, as actually intended, may be materially changed, the mistake, it is held, cannot invalidate the will on that account, and render it inoperative; for there is no such doctrine of law as requires the testator's intent to be indivisible, or defeats the will *in toto* inasmuch as the testator's intention must fail in part." 6 Schouler on Wills, Executors and Admrs. (6 ed.), Sec. 259, page 314.

It seems to us that the line of cases in which *Mears* v. *Mears*, 15 Ohio St., 90, is conspicuous supports the doctrine herein outlined. In that case no question was made that the testator knew the verbiage employed in the will; but he did not know its legal effect. It was argued that some of the provisions of the will were unlawful, and, therefore, being void and incapable of execution, that the will of which they were a part failed because the effective portions of the will alone did not constitute the will of the testator. To this the Supreme Court said at page 95:

"Assuming that those devises were invalid, did it result, as a consequence, that the whole will was void? The will contained bequests and devises of unquestioned validity. Because other devises were invalid, ought such invalidity to destroy those which were unquestionable? We have been referred to no case where it has been so held, and we see no sound reason for adopting such a rule.

A will may be valid in part, and void in part, as to its provisions.''

The Supreme Court of Connecticut, in *Comstock v. Hadlyme Ecclesiastical Society*, 8 Conn., 254, had under consideration a case in which ''the most important objection is the omission to insert the legacy to her grandchildren of 100 dollars each. That the testatrix directed this; that she supposed it was done, and that it was not done, are to be considered as proved, for the purposes of this motion.'' That court could not see that the other provisions of the will were any more affected by an omission from the will than by a void insertion in the will. It says:

''If, by the construction given to the words used, the intent may be defeated, and yet the will remain valid, why shall not the same effect follow where it arises from an omission to insert certain words which were intended?''

We conclude that the principle announced in the *Mears case* and repeated over and over in the texts and cases is applicable to the case at bar.

The remaining questions are not important. If the plaintiffs could not set aside the will on the ground herein discussed they could not prevail. Upon the other issues the weight of the testimony was so strongly with the defendants that we could not in any event deny that the verdict resulted in substantial justice. Hence, the judgment predicated thereon ought to be and is affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., and SAYRE, J., concur.