67 So.2d 806

## FULLER et al. v. NAZAL.
### 4 Div. 704.

Supreme Court of Alabama.
Oct. 29, 1953.

Smith & Smith and Roy L. Smith, Phenix City, for appellants.

Walker & Walker, Opelika, and Homer W. Cornett, Phenix Ciy, for appellee.

602

SIMPSON, Justice.

This is a will contest. The proceeding was instituted to prove and have admitted to probate and record the last will and testament of Mrs. Ruth Bayard Edmunds, a resident of Phenix City, Alabama, who died April 21, 1951. The appellants are grandchildren of decedent and appellee is her only surviving child.

The circumstances are novel and call for an application of § 27, Title 61, Code 1940. The over-all question is whether a will which has been revoked by a second will has or has not been revived by the operation of a subsequent codicil.

Mrs. Edmunds duly executed a will on June 28, 1939; thereafter on July 15, 1941, she executed another will which effectively revoked the 1939 will; and thereafter on November 30, 1947, she executed the following duly attested instrument:

"Georgia, Muscogee County:

"Whereas, I, Mrs. Ruth Bayard Edmunds, a resident of Phenix City, Alabama, did, *on the 28th day of June, 1939,* sign, seal, and declare and publish my last will and testament *in the presence of E. S. Flowers, J. Mark Mote and Mary W. Robinson, who signed the said will and testament as witnesses;* and

"Whereas, I am desirous of making certain changes in my said will,

"I, Therefore, make and publish this codicil to said will and testament, and also re-publish all the terms of said will not in conflict with this codicil.

"I.

"I hereby revoke Item VII of my original will.

"II.

"I hereby constitute and appoint my daughter, Mrs. Ruth Edmunds Nazal, as a co-executor of my will, and as a co-trustee of the trusts created and established in said will. This appointment is made upon the condition that my said daughter shall serve in said capacities without compensation. My other executor and trustee, the Merchants and Mechanics Bank, of Columbus, Georgia, shall be entitled to and shall receive the full compensation and commissions allowable for administering said will and said trusts.

"In Witness Whereof, I have hereunto set my hand and seal this *30th* day of *November,* 1947.

"(Signed) *Ruth Bayard Edmunds*"

Then follows the proper attestation clause.

The two wills were substantially the same except Item VIII. The dispositions in that item of the 1939 will were somewhat favorable to appellants, where those in Item VIII of the 1941 will were not, but were favorable to appellee and her children. When testator died appellee propounded the 1941 will for probate. Appellants interposed their contest, claiming the 1939 will, together with the codicil, was the last will and testament and propounded these documents for probate; appellee then interposed her contest to these documents as the last will and testament of decedent and contended the codicil did not revoke the 1941 will but was intended to apply to it.

The crucial issue in the case was whether or not the 1947 codicil had the effect of reviving the 1939 will and of revoking the 1941 will, or whether testator intended the codicil to apply to her 1941 will but by mistake of the draftsman it was made to refer to the 1939 will.

The cause was tried to the jury and the 1941 will was declared by the verdict to be the last will and testament of the decedent and that the codicil was intended to apply to that will. The court, on motion of appellee, then struck from the codicil the provisions referable to the 1939 will and admitted to probate the codicil, as amended, together with the 1941 will. This method of eliminating from a testamentary document parts not intended by the testator but inserted by mistake of the draftsman, if as amended the scheme of the will remains intact, has been approved. 57 Am. Jur. 274, §§ 376, 377; Sherwood v. Sher-

wood, 45 Wis. 357; O'Connell v. Dow, 182 Mass. 541, 66 N.E. 788; City Nat. Bank of Columbus v. Slocum, 6 Cir., 272 F. 11; In the Goods of Boehm, Probate Div. 247; In the Goods of Reade, P.D. 75; In the Goods of Gordon, p. 228. Our decisions recognize the right to contest only a part of a will or codicil and to admit to probate the part which is not revoked. Lyons v. Campbell, 88 Ala. 462, 7 So. 250; Shelton v. Gordon, 252 Ala. 187, 40 So.2d 95; Binford v. Penney, 255 Ala. 20, 49 So.2d 665. In effect, this was the result attained by granting appellee's motion and the proceeding impresses us as sound practice. No assignment of error challenged the procedure.

As provided by statute, Code 1940, Title 61, § 52, the trial court made up the issue for determination by the jury in his oral charge as follows:

"A cardinal principle in the construction of wills is to ascertain the intent of the testator and give it effect if it is not prohibited by law. (Record, 186.). * * *

"The plaintiff in this case contends that in 1941, the deceased, Mrs. Edmunds, made a will and by that will she revoked a former will made in 1939. The plaintiff contends that sometime in 1947, she [Mrs. Edmunds] gave instructions to some member of the bank, I believe it was the Merchants & Mechanics Bank in Columbus, Georgia, to add a codicil to that will, and it is the contention of the plaintiff that the codicil referred to the '41 will. However, on the other hand, the defendant in this case contends that by that codicil, she intended to revive the '39 will; that that was her intention, to revive that will, and that in so doing she revoked the '41 will. * * * Seek diligently for the truth and try to ascertain the intention of the testator, what was the intention of the testator, as it is your duty to decide that. * * * That codicil must be applied to one or the other of those wills, and the whole issue for you to determine is on which will (it) * * * is to be applied. (Record, 187, 188.)"

The evidence was entirely sufficient to warrant the verdict returned in response to the foregoing charge, since there was substantial proof going to show that Mrs. Edmunds all the while thought that her 1941 will remained in full force and effect and therefore that the codicil, rather than revoking that will and reviving the 1939 one by implication, was intended to apply to her last will, but that by the mistake of the draftsman it was captioned to apply to the 1939 will. It would serve no useful purpose to set out the evidence, inasmuch as the appeal presents the principal legal question as to whether or not this issue was a question of law for the court or of fact for the jury. We entertain the view that the court ruled correctly in refusing for the appellants the affirmative charge and in submitting the issue to the jury.

The rule, of course, is that the intention of the testator governs the construction of a will, but if by its terms it is unambiguous there is no room for construction and it will be taken as written. Smith v. Nelson, 249 Ala. 51, 29 So.2d 335.

But if the document is ambiguous, then the intention of the testator is the primary inquiry and will be ascertained not only from the language of the will, taken in connection with existing circumstances known to the testator at the time of drafting the instrument, but also from the testator's relevant declarations or statements at or about the time of its execution. De Mouy v. Jepson, 255 Ala. 337, 51 So.2d 506.

This latter principle controls the construction of the codicil here. Under our revival statute a codicil may not revoke a last will and revive a prior one by mere implication. For a codicil to have the effect of reviving a will previously revoked by reference to the date of such prior will, the intention of the testator to revoke the intervening will and to revive such revoked will must be clearly expressed in the face of the codicil either by express words referring to the prior will as having been revoked and declaring an intention to revive the same or by a disposition of the testator's property inconsistent with any other intention. A reference to the revoked will merely by the date of its execution and its subscribing witnesses is not

alone sufficient in and of itself to impart such an intent. Title 61, § 27, Code 1940; The Wills Act of 1837, 1 Vict. c. 26, §§ 20 and 22; In the Goods of Steel, L.R. 1 Prob. & Div. 575; In the Goods of Ince, 2 Probate Div. 111; Morrell v. Morrell, 7 Prob. Div. 68; Rogers and Andrews v. Goodenough, 2 Swabey and Tristram 342; Allen v. Bromberg, 147 Ala. 317, 41 So. 771; Price v. Marshall, 255 Ala. 447, 52 So.2d 149.

Section 27, supra, of our wills statute reads:

"Former will not revived by revocation; exceptions.—The making of any subsequent will or writing, and the cancellation, destruction, or revocation thereof do not revive any will previously executed, unless it appear, by the terms of such revocation, that it was the intention of the testator to revive and give effect to the first will; or unless after such cancellation or destruction, he duly republish the previous will."

■■ Thus two methods are provided for reviving a prior will revoked by a subsequent will: (1) by the cancellation, destruction or revocation of the second will in terms which declare the intent to revive the first will, and (2) after a cancellation or destruction of a last will by the republication of the previous will. Obviously, the second alternative does not apply here because the second will was not cancelled or destroyed. Construction of the codicil, therefore, is controlled by the first alternative. The first alternative in effect provides that the same act should both cancel, destroy or revoke the second will and revive the first one and we find no such intent expressed in the codicil. The codicil does not in and of itself show an intent on the part of the testator to revoke the 1941 will and to revive the 1939 one. It is manifestly ambiguous in referring to the 1939 will as the testator's last will when in fact the 1941 will, still unrevoked, was her last will. So it became necessary and proper to resort to evidence *aliunde* to determine the intent of the testator with respect to the issue.

This is a case *primæ impressionis* in our jurisdiction, but the English cases cited *ubi supra* are exactly sustentive and support the foregoing analysis of the Alabama statute. The first English statute which dealt with revival of a former will was the Wills Act of 1837, 1 Vict. c. 26. Section 20 of the English act corresponds to our § 26 of Title 61, Code, and § 22 of the English act corresponds to our § 27, Title 61.

The English act, § 22, just as § 27 of our statute, required the showing of an intention to revive by the succeeding testamentary document. After the passage of this act the cases of Goods of Steel, Goods of May, and Goods of Wilson, supra, were decided (reported as one case), having factual situations of much similarity to the instant case, where codicils referred to prior wills by date but did not in terms show an intention to revoke the intervening last wills and revive the former ones, thus disclosing a latent ambiguity in the instruments. The court held that the facts presented a latent ambiguity; that in each case the document in itself evinced no express intention of revoking the testator's last will and to revive his former one. The Justice in those cases pointed out that before the enactment of the statute all codicils to wills were held to revive the wills to which they were respectively codicils, although such wills had been previously revoked, and that the intent of the testator was immaterial. The court then, taking note of the change worked by the new statute, continued:

"Such being the state of the law before the act I hesitate to accept the conclusion, that the express words of the section meant to leave the matter in the same state in which it would have stood if they had never been introduced. If the merely declaring that a particular paper was to be taken as a codicil to a particular will was all that the legislature required when it enacted that the codicil should 'show an intention to revive' a revoked will, the words 'showing an intention to revive the same' were quite needless for every codicil to a revoked will, by force of

being a codicil to such will, so showed it. I therefore infer that the legislature meant that the intention of which it speaks should appear on the face of the codicil, either by express words referring to a will as revoked and imparting an intention to revive the same, or by a disposition of the testator's property inconsistent with any other intention, or by some other expressions conveying to the mind of the court with reasonable certainty, the existence of the intention in question. In other words I conceive that it was designed by the statute to do away with the revival of wills by mere implication."

Then expressing the view that a reference in a codicil to a revoked will by date alone was not sufficient evidence of an intent to revive that will, the court thus rationalized:

"The due result of the documents in each case and of such external facts as may be admitted in evidence, must of course be gathered from the language of the documents themselves read in the light of such facts. Some general views however present themselves—some general probabilities of intention attend all such cases as those now under judgment. It may in the outset, I think, be doubted whether any testator who bore in mind that he had revoked his will, and substituted another for it, ever really sat down with the purpose of revoking his last will and reviving the former one, and set about the execution of that purpose by simply making a codicil referring by date to his first will without more. Would any lawyer advise such a course, or would any unskilled testator imagine he could achieve the end by such a method? The leading idea of revoking the one and reviving the other in its place would surely find expression by some form of words in a paper designed mainly for that object. On the other hand, I conceive that, in the vast majority of cases, when a man declares his intention that a particular paper varying his previous dispositions shall be taken as a codicil to 'his last will and testament', he means that which really is his last will and testament, his then *existing* will, and the dispositions of his property then in force. In like manner, when he goes on to declare, in common language of codicils, that 'in all other respects he ratifies and confirms his last will and testament' he really means to confirm that which exists, and not to bring to life a paper which has ceased to be testamentary or revive dispositions which have no existence, and are therefore not properly speaking, capable of being ratified.

"That these conclusions are just in the main is amply proved by the fact that, wherever full light has been cast on the testator's real purpose by means of parol evidence, the reference to the earlier will has in most cases turned out to be nothing but a blunder. If experience had not shown the fact, it should be almost incredible that mistakes should occur so constantly as they do in so simple a matter as reciting the true date of a will. And yet in many cases errors of this kind if allowed to be proved, cannot only be proved, but proved to demonstration. The excluded evidence in the celebrated case of Walpole v. Cholmondeley, 7 T.R. 138, proved the error that had been committed and the cause of it, on testimony so clear and free from suspicion as to remove the last trace of reasonable doubt. Sometimes the error arises from the attorney or a clerk who has laid his hands on the wrong paper; sometimes from the testator who has kept his first will in his own possession and forgotten his second, which he has left in the hands of his attorney; oftentimes from the employment of an attorney to draw the codicil who has made an earlier will and has been in ignorance that an intermediate will has been made. I am therefore of the opinion that the court ought to be slow to conclude that a testator has manifested in this indirect way a desire to revoke his last will, and that it should scrutinize

narrowly the language of a codicil which is said to show such an intention lest in the desire to follow the testator's wishes too blindly it should set them at naught altogether."

The other English cases cited above as supporting this principle were decided after the Goods of Steel, May and Wilson cases and attained the same result. The trend of our own decisions, such as Allen v. Bromberg, supra, and Price v. Marshall, supra, would also seem to lend support to that view if projected to their logical conclusion. See also Purdy's Will, Sur., 20 N.Y.S. 307, which also bears some analogy.

■ It results therefore as our conclusion that the trial court correctly epitomized the issue to be determined by the jury and properly allowed in evidence the testimony of the testator's banker and her attorney, who drafted the codicil, tending to show that a mistake with respect to which will the codicil was intended to refer had been made, as well as the testator's relevant declarations and statements made with reference to the will, including her several letters to the appellee, all tending to show that she had no intention of revoking her last will of 1941 and of reviving the former one, but all the while thought the 1941 will was in full force and effect.

The foregoing disposes of the important questions presented for review. It remains only to consider the propriety of the refusal of several written charges requested for appellants. None of these charges are numbered, so we must refer to them by the numbered assignments claiming error in their refusal.

■. The charge in assignment No. 1 is argumentative and misleading.

■ The charge in assignment No. 2 was abstract, since there was no issue of undue influence in the case.

■ The charge in assignment No. 3 could also well have been refused as embracing a matter not an issue in the case, to wit, fraud; also it is misleading.

■ The charge in assignment No. 4 was eliptical and in the form as requested was meaningless. Requested written charges must be given or refused in the terms in which they are written. Code 1940, Title 7, § 273.

■ The charges in assignments 5 and 6 postulate a finding by reliance upon the "facts" presented, whereas from a technical standpoint the jury should rely upon the evidence presented in order to determine the ultimate facts of the case. Greenleaf, Evidence, § 1. The trial court took note of this principle in his oral charge and we do not think prejudicial error intervened in refusing the charges.

■ The charge in assignment No. 7 if for no other reason was properly refused as containing a meaningless expression, "without equitation." The essential elements of the charge, however, were fully covered in the oral charge.

We conclude the case was well tried and that no error to reverse is made to appear.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and CLAYTON, JJ., concur.