(818 P 2d 822)
No. 65,824

In the Matter of the Estate of MARTHA M. SMELSER, Deceased. JOHN H. SMELSER, JR., and FRANK DEAN SMELSER, *Appellants,* v. LLOYD SMELSER, *Appellee.*

Opinion filed October 11, 1991.

*Martha Jenkins,* of Murray, Tillotson & Van Parys, Chartered, of Leavenworth, for appellants.

*Ed Schneeberger,* of Ed Schneeberger, Chartered, of Leavenworth, for appellee.

Before RULON, P.J., GERNON, J., and PAUL E. MILLER, District Judge, assigned.

RULON, J.: John H. Smelser, Jr., and Frank Dean Smelser, petitioners, appeal the district court's order denying admission to probate of a portion of a codicil to their mother's will. Lloyd Smelser, respondent, also Martha's son and the executor of her estate, cross-appeals the court's order admitting a portion of the codicil to probate. We affirm the district court's order.

The undisputed facts of this case are as follows:

On June 10, 1983, when Martha executed her last will and testament, she was the owner of a 160-acre tract on which her house was located. Paragraph four of her will leaves the north half of this tract to her son Lloyd and the south half to her other sons Frank and John. Martha then bequeathed all her remaining property to her three sons in equal shares. Martha executed a codicil to her will on April 5, 1989. The codicil expressly revokes paragraph four of her will and republishes her will as amended. Among the amendments to her will are bequests of $20,000 each to Frank and John. Martha died on January 31, 1990. Lloyd, as the named executor, ultimately filed an amended petition requesting probate of the will, but objecting to probate of the codicil. The petition specifically alleged the codicil does not reflect the testamentary intent of Martha because of scrivener mistake. Alternatively, the petition alleged improper execution of the codicil.

Margaret Smelser, Lloyd's wife, testified that during their marriage, she and Lloyd lived near Lloyd's parents and assisted them in their farming and cattle operations. On the other hand, John and Frank left the farm and never returned on a permanent basis. In 1973, Lloyd's parents conveyed to Lloyd and Margaret two acres of the north half of the quarter. Later, Lloyd and Margaret built their home on this tract, near the home of Lloyd's parents.

According to Margaret's testimony, Martha decided to dispose of the south half of the quarter differently than provided in her will. Martha wished to keep the entire 160 acres intact because this was necessary for Lloyd to continue the cattle operation, of which he was a partner. However, Martha did not want to eliminate John and Frank from the provisions of her will. Consequently, Martha sold the south half of the quarter to Lloyd's family for $500 per acre or $40,000. Frank and John would equally

share the $40,000 after Martha's death. Martha never intended to change the testamentary disposition of the north half of the quarter to Lloyd.

Eventually, the attorney who drafted Martha's will prepared and mailed the codicil to Martha. Margaret then took Martha to the Bank of McLouth where the execution of the codicil was witnessed and notarized. According to Margaret, Martha understood she was signing a codicil to her will. However, Margaret could not recall if Martha expressly declared the codicil to the subscribing witnesses and notary before execution. Margaret claims she first learned the codicil erroneously revoked the devise of the north half to Lloyd during a telephone conversation with Martha's attorney after Martha's death.

In addition to Margaret's testimony, the district court heard the testimony of Martha's attorney. He essentially testified that Martha expressly wanted the north half of the quarter to pass to Lloyd. Further, she intended the sale price of the south half to be equally divided between Frank and John. Martha specifically instructed that her will be amended to insert a bequest of $500 to her church, provide bequests of $20,000 each to Frank and John, and provide for an alternate executor. The attorney emphasized that Martha did not intend to revoke her earlier bequest to Lloyd.

The persons who acted as witnesses and the person who notarized Martha's codicil also testified. Gloria Packer, an employee of the Bank of McLouth, stated that she, the other witness, the notary, and Margaret were present when Martha signed the codicil. Gloria testified Martha never stated that the document she was signing was a codicil to her will. Nor did Martha say whether she had read the document. Gloria did not read the attestation clause or the self-proving provisions of the affidavit before signing each as a witness. Dorothy McAferty, also a bank employee who witnessed Martha's execution of her codicil, next testified. Dorothy testified that she was never told the document was a codicil and that she did not read any part of the document before signing it. Dorothy also testified that Martha never said she had read the document. Ronald Scott, the notary witnessing the codicil's execution, also testified that he never read the document before

notarizing it and that Martha never said anything about the document to anyone in his presence.

The district court admitted the will to probate and essentially made the following findings: Martha decided to change her will by selling the south half of the quarter to Lloyd and dividing the proceeds equally between John and Frank; Martha intended to keep the north and south halves of the quarter together; and the draftsman made a mistake when the language of the codicil revoked paragraph four of Martha's will. The court then admitted the codicil to probate except for the portion revoking the bequest to Lloyd of the north half.

We must decide if the district court erred in refusing to admit to probate the portion of the codicil which revoked paragraph four of Martha's will. Under the circumstances of this case, we conclude there was no reversible error.

On appeal, John and Frank argue the district court's action in refusing to admit into probate a portion of Martha's codicil is actually an improper modification of the codicil. They further argue that, because the language in the codicil revoking paragraph four of the will is clear and unambiguous, the use of probate hearing testimony or extrinsic evidence to determine Martha's testamentary intent is impermissible.

Lloyd argues to us that the district court did not modify the codicil, but merely refused to probate a portion of the codicil that it held invalid. Specifically, Lloyd contends the codicil language revoking paragraph four of the will was caused by scrivener mistake and does not reflect Martha's testamentary intent.

Our standard of review is clear:

"Where the trial court has made findings of fact and conclusions of law, the function of [an appellate court] is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. [Citations omitted.] Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.] Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]" *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988).

John and Frank rely on the well-established rule that where the language of a will is clear and unambiguous, a court cannot go beyond that document to determine testator intent. *Theimer v. Crawford*, 224 Kan. 586, 589, 582 P.2d 1151 (1977). However, this rule is applied only where the action is to construe or interpret the will *after* it has been admitted to probate. See *Theimer*, 244 Kan. at 586. This case involves an action not to construe Martha's codicil, but to determine whether it is a valid expression of her testamentary intent and thus admissible to probate. The validity of a will or codicil does partly depend on whether it accurately expresses the testator's true testamentary intent. A corollary to this rule is the requirement that the testator have knowledge of the will's contents at the time of its execution for the will to be valid. *In re Estate of Koellen*, 162 Kan. 395, 402, 176 P.2d 544 (1947). Execution of the will establishes a rebuttable presumption that the testator has this knowledge. 162 Kan. at 402. Clear and convincing evidence must be presented to rebut this presumption. See *McConell v. Keir*, 76 Kan. 527, 534, 92 Pac. 540 (1907).

Other jurisdictions have ruled evidence extrinsic to the will showing scrivener error is admissible in a proceeding either to admit the will to probate or to challenge the probate of the will. Such evidence is admissible to show the entire document or a part of it is invalid as not reflecting the testator's true intent. Annot., 90 A.L.R.2d 924, 931. In an early Delaware case, the following instructions were given to a jury where the probate of a will was challenged:

"Another and more material ground of objection to the will is a supposed discrepancy between it and the instructions on which it was founded and from which it was drawn. If the jury are of opinion that these differences exist to such an extent as to make the will essentially different from the instructions, they must then judge from the evidence whether these deviations were made with the knowledge and consent of the testator. If they were not made known to him, if the will was not read over, or its contents and variations from the instructions otherwise explained to him, then this is not his will; but if he knew of and approved the alterations he adopted them by execution of the will, and the same ought to be confirmed." *Chandler, et al. v. Ferris*, 1 Del. (1 Harr.) 454, 464 (1834).

Similar instructions were given to the jury in *Davis, et al. v. Rogers*, 6 Del. (1 Houst.) 44, 98-99 (1855). In a much more

recent case, *Millman v. Millman*, 359 A.2d 158, 160-61 (Del. 1976), the Delaware Supreme Court cited both *Chandler* and *Davis* in holding that a scrivener's notes were admissible extrinsic evidence on the issue of whether a testator had knowledge of the contents of a will in a proceeding to determine whether the will should be admitted to probate. See *Cowan v. Shaver*, 197 Mo. 203, 213, 95 S.W. 200 (1906) (jury properly instructed that if testator executed will believing it disposed of his property in certain manner, but it did not, will was not valid).

Kansas joined the jurisdictions which permit the introduction of extrinsic evidence of scrivener mistake on the issue of whether a testator knew the contents of his or her will in *Protheroe v. Davies*, 149 Kan. 720, 89 P.2d 890 (1939). This case involved a challenge to a will which had been admitted to probate. The testatrix, at the time she executed her will, was 75 years old and handicapped. She lived on the first floor of her home, while a son and his family lived on the second floor. She spoke and read Welsh with ease, but spoke and read English with difficulty. The testatrix understood English when it was spoken only if it was spoken slowly. She was intelligent and her mind was alert. 149 Kan. at 722. The testatrix died two years after executing her will. Two of her children filed a petition contesting her will, alleging the will was not valid and was the product of undue influence exerted by the son who lived with her. 149 Kan. at 724-25.

While our Supreme Court affirmed the district court's finding that the will was not the product of undue influence, it held the will was invalid. 149 Kan. at 729, 735. At trial, the scrivener of the will testified that he did not write the paragraph disposing of the testatrix's home place according to her instructions. The scrivener read this paragraph to the testatrix twice, once by itself and once as he read the entire will. Each time he read it erroneously, not as he had actually written it. 149 Kan. at 726. The court concluded this testimony showed the testatrix did not have knowledge of the contents of her will and therefore the will could not be valid as her last will and testament. 149 Kan. at 733-34.

We believe the district court here properly admitted the testimony of Martha's attorney and Margaret on the issue of whether Martha's codicil as written accurately reflected her testamentary

intent regarding the devise of the north half. We are satisfied this testimony provides substantial competent evidence to support the district court's factual finding that the scrivener erred in inserting a statement into the codicil which resulted in the revocation of the devise of the north half to Lloyd.

The effect of this scrivener mistake on the validity of the revocation of the devise to Lloyd must next be determined. Testator knowledge of the scrivener's mistake is an important factor in the determination of whether a will is a valid expression of the testator's testamentary intent. See Annot., 90 A.L.R.2d at 935-36. Some jurisdictions have held that where affirmative proof was presented that the testator was made aware of the contents of the will as written, the will is not invalid. See Annot., 90 A.L.R.2d at 941-42.

Other jurisdictions, however, have held to the contrary, finding a will containing scrivener error invalid despite the testator having been made aware of its contents or having had the opportunity to become aware of its contents. See *Bradford v. Blossom*, 207 Mo. 177, 222, 105 S.W. 289 (1907) (testatrix had will in her possession for 7 to 10 days before execution, but will not discussed with her before execution); *Cowan*, 197 Mo. at 210 (scrivener drafted will as dictated by testator and will then immediately executed); Annot., 90 A.L.R.2d at 936-37.

Here, the district court found that Martha believed the codicil accurately expressed her testamentary intent. The court's finding that the codicil was not read at its execution and that it was not read to or by Martha is supported by the record. However, while Margaret did testify that she did not read the codicil to Martha after Martha received it in the mail, there is no affirmative evidence showing that Martha did not read the codicil herself at some time before it was executed. On the other hand, there is no affirmative evidence that she *did* read the codicil and was thus familiar with its contents before executing it. There is undisputed, substantial and credible evidence that Martha intended to devise the north half to Lloyd and to bequeath the sale proceeds from the south half to Frank and John. We conclude there is no affirmative evidence that Martha actually knew the codicil revoked the devise to Lloyd when she executed it. The codicil's revocation of that devise is not a correct expression of her tes-

tamentary intent which allows the fulfillment of Martha's actual testamentary wishes.

Finally, we must decide if, despite the lack of affirmative evidence that Martha was aware of the contents of the entire codicil, the district court properly refused to probate only that part which revoked the devise of the north half to Lloyd. In cases where the testator's lack of knowledge of the will's contents is due to scrivener mistake, deletion of only the portion inserted by error has been established as a proper method of correcting the error. Annot., 90 A.L.R.2d at 932. "This method of eliminating from a testamentary document parts not intended by the testator but inserted by mistake of the draftsman, if as amended the scheme of the will remains intact," was approved by the Alabama Supreme Court in *Fuller v. Nazal*, 259 Ala. 598, 602, 67 So. 2d 806 (1953). Kansas also follows the rule that where a provision of a will is invalid for any reason and the testamentary scheme of the testator can be carried out regardless of the void provision, that provision will be stricken and the testamentary plan given effect. *In re Estate of Robinson*, 231 Kan. 300, 310-11, 644 P.2d 420 (1982). We conclude striking from the codicil only the revocation of the devise of the north half to Lloyd does not destroy the testamentary scheme remaining in Martha's will and codicil.

Affirmed.