Derr v. Derr.

No. 27,435.

FLORENCE IRENE DERR et al., Minors, by EDITH DERR, Their Mother and Next Friend, *Appellants,* v. GUY H. DERR, and C. D. GRANT, as Executor of the Alleged Will of HORACE C. DERR, Deceased, et al., *Appellees.*

SYLLABUS BY THE COURT.

1. WILLS—*Revocation—Instrument Executed With Formality of Will.* Under our statute (R. S. 22-241) a testator may revoke his will by some other writing, signed, attested and subscribed in the manner provided by statute for the making of a will. The exact wording of such a writing is not so important if the intent to revoke the will is clear from the language used.

2. SAME—*Revival of First Will by Reference.* One who has made a second will and by a later instrument revokes it, may, by such instrument, revive and give effect to his first will, if his intention to do so is clear from the wording or provisions of such instrument.

3. SAME—*Separate Instruments.* The term "will," as used in R. S. 22-241 *et seq.,* includes every kind of testamentary act taking effect from the mind of the testator and manifested by an instrument in writing, executed and attested in conformity to the statute. It may consist of two or more instruments, one evidencing the testamentary act and referring to another for specific provisions.

4. SAME—*Language Constituting Revocation and Revival.* In 1921 a testator executed his will, devising to a son the use for life of farm land in Oklahoma, with remainder to his children, and devising to another son the use for life of farm land in Kansas, with remainder to his children. In May, 1925, he executed a second will, making different disposition of his property. In October, 1925, he executed an instrument reading: "I wish my first will to be in effect this date." This was executed, attested by witnesses, as required by statute pertaining to the execution of wills. *Held,* that the effect of the execution of such instrument was to revoke his second will and to revive and give effect to his first will.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed June 11, 1927. Reversed.

*Sam K. Sullivan, Neal A. Sullivan* and *R. J. Shive,* all of Newkirk, Okla., for the appellants.

*S. C. Burnette* and *Oscar Renn,* both of Arkansas City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.:   This is an action to set aside a will and the probate thereof, and for other relief. It was tried to the court, findings of fact were made, and judgment was rendered for defendants. Plaintiffs have appealed.

Wills, 40 Cyc. pp. 1094 n. 26, 1173 n. 62, 1215 n. 6, 1217 n. 22, 1218 n. 24; 28 R. C. L. 112, 172.

Derr v. Derr.

The testator, Horace C. Derr, owned a farm in Kay county, Oklahoma, occupied by his son, Guy H. Derr, and family. He also owned a farm in Cowley county, Kansas, occupied by his son, Harry Derr, and his family. He made his home with his son Harry and family. Harry Derr died May 11, 1925. The testator died November 24, 1925, at the age of 80 years. At the time of his death he owned the two farms above mentioned and personal property of the value of about $2,200. Other material findings and the conclusion of the court are as follows:

"The court further finds that in February, 1921, Horace C. Derr made and executed a will, and by the contents of said will he left the farm in Kay county, Oklahoma, to Guy H. Derr for life, with the remainder over to his children, Edith A. Christy, Edna Lena Derr and Albert Theodore Derr, and left the farm in Cowley county, Kansas, to Harry Derr, another son, with the remainder over to Florence Irene Derr, Howard Clelland Derr and Richard Gordon Derr, and all of the personal property to the children of Harry Derr.

"The court further finds that on May 19, 1925, Horace C. Derr as H. C. Derr made, executed and published his certain will, which said will has been admitted to probate in the probate court of Cowley county, Kansas, and by the terms of said will left the farm in Kay county, Oklahoma, as in the will of 1921, and divided the farm in Cowley County, Kansas, equally among all of his grandchildren, the grandchildren above spoken of, and divided his personal property among all the grandchildren. . . .

"The court further finds that on October 26, 1925, Horace C. Derr made and executed an instrument in writing, a copy of which is as follows:

"'OCTOBER 26, 1925.

"'I wish my first will to be in effect this date.

"'(Signed)    HORACE C. DERR.

"'Witnesses: Mrs. J. P. Wilhite, L. T. Derr and G. H. Derr.

"'Signed before me this 26th day of October, A. D. 1925.

"'C. D. GRANT, *Notary Public.*

"'My commission expires Feb. 21, 1927.'

"The court further finds that said Horace C. Derr signed said instrument in the presence of the witnesses and witnesses signed in the presence of Horace C. Derr.

"The court further finds that at the time of signing said instrument Horace C. Derr was trying to revoke his will of May, 1925.

"The court further finds that Harry Derr died prior to the death of Horace C. Derr.

"The court further finds that a diligent search has been made for the will of 1921, and that the same cannot be found.

"The court further finds that the value of the land in Oklahoma is approximately the same as the land in Cowley county, Kansas.

"The court further finds that since 1921 Horace C. Derr made his home with his son, Harry Derr, and that Horace C. Derr resided at the home of Harry Derr up until the time of his death. . . .

"The court further finds that the deceased, Horace C. Derr, was not satis-fied with the way the property descended in his last will of 1925, and that the said Horace C. Derr, by the instrument of October 26, 1925, tried to revoke said will.

"The court further finds that said instrument of October, 1925, did not re-voke the will of 1925, nor republish any of the aforesaid wills.

"It is therefore considered, ordered and adjudged by the court that the will of 1925 be in effect and valid and the last will and testament of Horace C. Derr, deceased."

There was evidence tending to show that the testator had exe-cuted a will in 1914, but we need give that no special consideration, for the court found that by it the testator disposed of his property the same, or substantially the same, as in the will of 1921, and it is not seriously contended on this appeal that the term "my first will," used in the instrument of October 26, 1925, referred to the will of 1914.

In the main two questions are presented: Did the instrument of October 26, 1925, revoke the will of May 19, 1925, which had been probated. The trial court found that at the time of signing such in-strument the testator "was trying to revoke his will of May 19, 1925," and that the testator "was not satisfied with the way the property descended by his last will of 1925, and that the said Horace C. Derr, by the instrument of October 26, 1925, tried to revoke such will." These findings are abundantly supported by the evidence. There was evidence that after the death of Harry Derr the testator "got mad at Harry's wife," that he had the idea she was likely to present a claim against his estate for his maintenance, and while entertaining these ideas he went to his attorney, who had prepared his will in 1921, and caused to be prepared the will of May 19, 1925. This instrument made a disposition of his property more favorable to the children of his son Guy and less favorable to the children of his son Harry than his previous will had done. Later, in October of that year, the testator became so ill that it was deemed advisable by his relatives and friends that he be taken to the hospital. He did not want to go to the hospital until he could get his will of May, 1925, for the purpose of destroying it. When the will of May 19, 1925, was drawn, Mr. E. C. Baker, a stepson-in-law of Guy H. Derr, accompanied him to the office of Judge Swartz, where the will was prepared and executed. They came away from the office to-gether, and the testator gave the envelope containing the will to Mr. Baker and told him to put it in the bank for him, it being too

late to do so that day. Mr. Baker did take it to the bank the next day and was given a receipt for it. Some time later Mr. Baker gave this receipt to Guy H. Derr. In October, when the testator was ill and his relatives and friends were talking of taking him to the hospital, the testator tried to get this receipt. He sent a boy to Mr. Baker for it, but Mr. Baker could not find it. The testator also sent his brother down town to see if he could locate this will, but he was unable to find it. He also sent a friend, Mr. C. D. Grant, to find the will. Grant had been named as the executor in the will, but Grant did not know where to look for it, and didn't try to find it. Mr. Grant went back to see him again. His testimony concerning what took place is, in part, as follows:

"Q. When you went out did you go in to see him? A. Yes, sir.

"Q. Did you talk with him? A. Yes, sir.

"Q. Did you tell him what you came for? A. Yes, sir.

"Q. What did he say to you? A. He said he wouldn't go to the hospital until this paper was produced.

"Q. What paper did he mean? A. I suppose this one he had been talking about all the time. . . .

"Q. What we want is exactly the conversation you and Mr. Derr had, as near as you can get it. What else did he say? A. I asked him what paper. I asked his brother—he was there. He said he had made several trips after it and was unable to find it. I knew nothing about any other wills, or anything. I said: I will draw up a paper then and kill this paper, whatever is drawn up. I made a little notation—tore a piece of paper out of a notebook that lay on a little commode where there was a water pitcher.

"Q. Do you have that piece of paper with you? A. I do.

"Q. Is this the instrument you drew up? A. That is. I tore that piece of paper out and wrote on it what is there.

"Q. Did Mr. Derr sign this paper in your presence? A. He did. I read it to him twice, him and the witnesses. He signed it and the witnesses signed it. I took the paper back to town and 'notaried' it. . . .

"Q. Who was present when that instrument was signed by H. C. Derr? A. Guy Derr, L. T. Derr and Mrs. Wilhite.

"Q. Who is L. T. Derr? A. Brother.

"Q. And Guy H. Derr? A. His son.

"Q. This old gentleman's name was Horace, or H. C. Derr? A. Yes, H. C.

"Q. H. C. is the way he signed? A. Yes, sir. . . .

"Q. What was the first thing said to you, and by whom, about this paper you are talking about? A. I don't recollect who mentioned it first. Some one said he wouldn't go to the hospital until they produced that paper. We talked a while; finally I said, 'I will draw up this paper here so we can take him to the hospital.' I wrote this paper out. Here it is. I read it to him and asked him if that was what he wanted. He said, 'Yes,' then somebody helped raise him up for him to sign it. I read it again and it was witnessed by the witnesses. . . .

"Q. When did he say that?   A. When we were in the room.   I don't know the exact moment.   I don't remember what the first words were that were said to me.   When I first went in there was quite a conversation—three or four or five people."

There was other testimony of similar tenor.   From this it is clear that the will executed by testator May 19, 1925, was made at a time soon after the death of his son Harry and when the testator was temporarily displeased at some act or attitude of his son's widow, but upon reflection concerning the matter he had concluded that he should not discriminate against the children of his son Harry because of any displeasure he had for Harry's widow.   He had definitely fixed in his mind to destroy the will of May 19, 1925, and to have the provisions of his prior will carried into effect, and so firmly fixed was that idea in his mind that he refused to go to the hospital for treatment until that could be done.

It was suggested in the briefs in this court that the trial court was of the view that the instrument of October 26, 1925, did not have the effect of revoking the will of May 19, 1925, because it did not specifically state that the same was revoked.   The words used are not so important.   The real test is whether the words used are inconsistent with the continued vitality or validity of the will of May 19, 1925.   A will may be revoked either expressly or by implication..   If a later instrument makes a disposition of property inconsistent with the terms of a will, or uses language from which it is clear that the intention of the testator was that such will should no longer continue to be a valid will, its necessary effect is to revoke such will, even though the word "revoke" is not used.   (See *Caeman v. Van Harke,* 33 Kan. 333, 6 Pac. 620; *In re Backus' Will,* 63 N. Y. Supp. 544; *Witter v. Mott,* 2 Conn. 67; *Gardner v. McNeal,* 117 Md. 27; *Gensimore's Estate,* 246 Pa. St. 216; *Estate of Danford,* 196 Cal. 339; *Burns, Executor, et al. v. Travis et al.,* 117 Ind. 44; *Lasier v. Wright,* 304 Ill. 130; *Luther v. Luther,* 211 Ala. 352; *Schillinger v. Bawek,* 135 Ia. 131; *Deppen's Trustee, &c., v. Deppen,* 132 Ky. 755; *Porch v. Farmer,* 158 Ga. 55; *Estate of Laege,* 180 Wis. 32; *Wheat v. Lacals,* 139 Miss. 300.)

Our statute provides:

"A will shall be revoked   .   .   .   by some other writing, signed, attested and subscribed in the manner provided by this act for the making of a will; .   .   ." (R. S. 22-241.)

The instrument of October 26, 1925, was executed in conformity

to this statute. It was witnessed as the statute requires a will to be witnessed. The fact that it is "notaried," while not a statutory requirement and was unnecessary, does not hurt it. The trial court erred in concluding that this instrument did not have the effect of revoking the will of May 19, 1925. (See *Ross v. Woollard,* 75 Kan. 383, 89 Pac. 680.)

The next question is whether or not this instrument of October 26 restored the former will, or was itself a will disposing of the testator's property, or whether its effect was to permit the property of the testator to pass under the law of descents, as without a will. Our statute provides:

"If after the making of any will the testator shall duly make and execute a second will, the destruction, canceling or revocation of such second will shall not revive the first will, unless it appears by the terms of such revocation that it was his intention to revive and give effect to his first will, or unless after such destruction, canceling or revocation he shall duly republish his first will." (R. S. 22-242.)

Here it appears, by the terms of the revocation, that is, by the language used in the instrument of October 26, that it was the intention of the testator to revive and to give effect to his first will. The language used is: "I wish my first will to be in force this date." Hence the instrument clearly complies with the statute as an instrument to revive the first will. In *In re Estate of Tibbetts,* 153 Minn. 53, it was held that where a testator executed a will and subsequently executed a second will revoking the first, and thereafter destroyed the second will for the express purpose of continuing the first in force, the first remains in force and was properly admitted to probate. In *Grotts v. Casburn,* 295 Ill. 286, construing an instrument executed in accordance with the requirements of the statute as to making and revocation of wills, reading:

"To whom it may concern: This is to certify that I hereby revoke the will made last winter favor of Ed. Grotts and desire that the will made and dated October 5, 1924, be my last will" (p. 287),

it was held to have effectively revoked the first will referred to and to constitute, together with the will of October 5, the deceased's last will and testament, the instrument being of testamentary character even though not designated as a will. In *Bayley & Others v. Bailey,* 59 Mass. 245, it was said:

"The term 'will,' in St. 1843, c. 92, includes every kind of testamentary act, taking effect from the mind of the testator, and manifested by an instrument in writing. An inhabitant of this state, while in the state of New York on a

Derr v. Derr.  ·

visit, being sick and in apprehension of death, executed an instrument in the presence of two witnesses who attested it at his request, in the following terms: 'It is my wish that the will that I made be destroyed, and my estate settled according to law.' Before signing his name thereto the paper was read aloud to the testator, and he was asked if it would answer, to which he replied that it would. It was held that this instrument was executed in the manner, and with the formalities prescribed by law, to admit it to probate in the state of New York as a testamentary instrument or codicil, and therefore, that under the statute of 1843, c. 92, § 1, it might be proved, recorded, and proceeded in as such in this state." (Syl.)

Under these authorities it is clear that the effect of the execution of the instrument of October 26, 1925, was to reinstate or restore the provisions of the prior will of 1921. This conclusion is forced upon us from either of two views: First, that it appears from the terms of the instrument that it was the intention of the testator to revive and give effect to his first will, in accordance with our statute (R. S. 22-242); second, the instrument of October 26, 1925, is itself a will. It was executed in conformity to the statute pertaining to the execution of wills and was clearly intended to affect the disposition of the property of the testator upon his death. (*Noble v. Fickes*, 230 Ill. 594.) A will may consist of two or more instruments. (*Merrill v. Boal et al.*, 132 Atl. 721 [R. I.]; *Hawkins v. McKee*, 321 Ill. 198.) The fact that the instrument of October 26 did not itself contain specific provisions disposing of property is no objection to it if it referred to and identified another instrument which contains those provisions. It did refer to the first will, and the court has found the provisions of that will. No objection is made to these findings. The two instruments themselves may be treated as constituting the will of the testator and as having been made on October 26, 1925. In this view we have three wills (disregarding the one of 1914): The first in February, 1921, which was revoked by the second will of May 19, 1925, making an entirely different distribution of the property, and the third made October 26, 1925, revoking the second, the terms of the will of October 26, 1925, being found in the instrument of that date and in the will of February, 1921. So, whether the instrument of October 26, 1925, be regarded, (*a*) as a revival of the will of February, 1921, or (*b*) as a new will, the result is the same. Either view might be correctly reached from this record. The result is that the disposition of the testator's property, as provided in the will of 1921, is the disposition of the property which should be carried out.

Perhaps it should be noted that when Mr. Grant, the executor nominated in the will executed May 19, 1925, went to have the same probated he said nothing about the instrument of October 26, 1925, and the circumstances of its execution—he and Guy H. Derr had previously discussed the matter and concluded not to mention it to the probate court—so that court had no opportunity to pass upon it.

From what has been said it necessarily follows that the judgment of the court below must be reversed with directions to enter judgment for plaintiffs, setting aside the will of May 19, 1925, and the probate thereof. It is so ordered.