52 So.2d 149

**PRICE et al. v. MARSHALL et al.**

**4 Div. 630.**

Supreme Court of Alabama.

April 19, 1951.

John W. Rish and Richmond M. Flowers, of Dothan, for appellants.

449

G. D. Halstead, of Headland, for appellees.

SIMPSON, Justice.

This is a contest of the will of Girlie Hutto Fraser, made in Daytona Beach, Florida, December 22, 1945. Mrs. Fraser died in Newville, Henry County, Alabama, in May, 1948, and the parties are the next of kin—the brothers, a sister, nieces and nephews of testatrix. Trial was by jury in the probate court, pursuant to the statute.

The grounds of contest were insanity and undue influence allegedly exerted on testatrix by her nephew, Byrd Marshall, one of the proponents of the will. Trial below resulted in a verdict and judgment for the proponents and the contestants bring the appeal.

By the 1945 will, testatrix left all of her property to proponents, her niece, Kathryn Marsh, and nephews, Byrd Marshall and Francis Marshall, share and share alike. Thereafter on June 22, 1946, it is contended by contestants, she executed a second will which revoked the prior will, making various dispositions of her property to all of her next of kin. The proof for proponents shows that on November 11, 1947, she obtained from her attorney, Mr. Selden, this second will, he having been made the depository thereof, destroyed it, with appropriate words indicating an intention to revive the 1945 will, and at that time executed a written instrument in words and figures as follows:

"November 11, 1947

"To Whom It May Concern:
"I, Girlie Hutto Fraser did ask Byrd Marshall to pick up a will Ray Selden was keeping for me, which he did and delivered to me, sealed, the date of this will was June 22, 1946. Of my own free will and accord, I am burning this will and desire to re-instate the will I made in December 1945, naming Byrd Marshall, Francis Marshall and Kathryn Marshall Marsh as my sole heirs.

"(Signed:)  Girlie Hutto Fraser
           "Girlie Hutto Fraser
"Witnesses:  Frankie Thomas
            "Audrey B. Marshall."

450

The proponents contended that if the 1946 instrument revoked the 1945 one, the above-quoted memorandum effectually revived the 1945 will. Thus were the issues presented on trial.

■■■■ The first proposition advanced for error is the action of the trial court in overruling contestants' demurrer to the petition to probate. The petition and petition as amended sufficiently invoked the jurisdiction of the court over the particular testamentary instruments to authorize the proceedings for probate in accordance with the statute. No great formality is required in such cases, just so the procedure is sufficient to call into exercise the court's jurisdiction to take probate. Small v. McCalley, 51 Ala. 527. The original petition applied for probate of the 1945 will and the amended petition brings in the instrument of alleged revival executed on November 11, 1947, and offers to probate the two instruments as constituting the entire will of the decedent. This is the approved procedure. Wheat v. Wheat, 236 Ala. 52, 181 So. 243. The demurrer was properly overruled.

Likewise untenable are the assignments of error challenging the action of the trial court in refusing the affirmative charge for the contestants. On the disputed issues of fact, this will contest was typically a jury case and we are not disposed to burden the opinion with any lengthy discussion of the evidence. It is sufficient to say that a jury question was presented as to the due execution of the 1946 will and, therefore, its efficacy to revoke the 1945 will, as was also whether the testatrix possessed mental capacity at the respective times she executed the several instruments mentioned, and whether, as contended by contestants, she was subject to the undue influence of Byrd Marshall when she executed the 1945 will and the quoted memorandum of revival in 1947.

■■■■ If the 1946 instrument was a legal will, its effect was to revoke the 1945 will, Code 1940, Title 61, § 26, and, under such circumstances, after the destruction by testatrix of the 1946 will, the strict legal question would be whether the quoted memorandum was efficacious to revive the 1945

will. This is the primary legal question and we answer it in the affirmative. The evidence was without conflict that this latter instrument was duly executed by Mrs. Fraser in the presence of the two witnesses who attested it in the manner and with the same formality prescribed for the execution of a will. It possessed, therefore, all the elements of a testamentary document. Such an instrument could have been made a codicil to the 1945 will, but this was not necessary to constitute it an effective instrument to revive that will. The will was subject to revival just as effectually by this separate instrument.

Our pertinent statute provides: "The making of any subsequent will or writing, and the cancellation, destruction, or revocation thereof do not revive any will previously executed, unless it appear, by the terms of such revocation, that it was the intention of the testator to revive and give effect to the first will; or unless, after such cancellation or destruction, he duly republish the previous will." § 27, Title 61, Code 1940. We do not find a case adjudicated by this court exactly bearing on the question, but the statute is plain and no particular elaboration seems necessary, since the memorandum clearly comes within its influence. There are, however, cases from other jurisdictions with statutes somewhat similar to ours which entertain a like view.

Two cases bearing much similarity to the one at bar are Grotts v. Casburn, 295 Ill. 286, 129 N.E. 137, 138, 14 A.L.R. 1015, 1016, and Derr v. Derr, 123 Kan. 681, 256 P. 800, 801, 53 A.L.R. 515, 516. The memorandum of revival in the Grotts case, executed May 31, 1948, was:

"To whom it may concern: This is to certify that I hereby revoke the will made last winter favor of Ed. Grotts and desire that the will made and dated October 5, 1914, be my last will.

"William T. Terry. (Seal.)

"Signed, sealed in our presence and in the presence of each other as witnesses to revoke the will made last winter in favor of Ed. Grotts.

"B. Kelly, M.D. (Seal.)
"W. E. Thompson. (Seal.)"

And that in the Derr case was:

"October 26, 1925.
"I wish my first will to be in effect this date:

"(Signed)   Horace C. Derr
"Witnesses: Mrs. J. P. Wilhite,
L. T. Derr and G. H. Derr."

In each instance the court held that ·the clear effect of the execution of the respective writings was to reinstate or restore the provisions of the prior first will which had been revoked by an intervening one.

On the legal question, then, ·of the effect of a writing such as the 1947 memorandum, we are constrained to hold that it would be sufficient to revive the prior will referred to therein (assuming, of course, the mental capacity, etc., of testatrix at that time).  It expresses the wish (or will) of the testatrix to revive the 1945 instrument as her last will and it was, therefore, a completed act of revival.

A careful study of the record, however, has convinced us that error prevailed in certain rulings on the evidence, to be now adverted to, which resulted in probable prejudice to the contestants and necessitates a reversal.

■   As stated, one ground of contest was lack of mental capacity of the testatrix. Testatrix was a native of Newville, Henry County, Alabama, and owned considerable property there.   She died there. During the last few years of her life she had been a resident of Daytona Beach, Florida, where she spent considerable of her time, but due to her extensive holdings in Henry County she made frequent trips back to her home, staying sometimes several days and sometimes a week or two, on which occasions ·she would see her various relatives who testified in the case and who had known her through the years. During the years 1945, 1946, 1947 and until her death in 1948, and for a long period of time prior thereto, she had become addicted to the excessive and continuous use of morphine and other narcotics and alcoholic beverages, and there was some proof to sustain the contention that her mind had become seriously impaired, the medical evidence showing that such continuous use undoubtedly would result to such an effect. The question vel non, however, as stated, of her mental capacity when she executed the three instruments was one of fact to be resolved by the jury.  We merely mention this to illustrate the error which we think prevailed in the rulings of the trial court in refusing to allow several intimately related witnesses to express an opinion as regards her unsoundness of mind.

■   Our view is that the court should have permitted Mary Price, a niece of testatrix; Esther Wells Price, niece of testatrix; Nancy Price, sister of testatrix; and Iona Wells, a nephew's wife, who managed Mrs. Fraser's Henry County farms from. 1946 to 1948 and was intimately associated with her during that period, to express their opinions on the basis of their association with the testatrix and the related facts and circumstances within their knowledge as to the soundness or unsoundness of her mind during the period inquired about.  ·We think these witnesses were shown to possess the requisite intimate acquaintanceship with the testatrix to qualify them to answer whether or not she was of sound or unsound mind at the times· in question.  Hale v. Cox, 231 Ala. 22, 163 So. 335;  Houston v. Grigsby, 217 Ala. 506, 116 So. 686;  Chandler v. Chandler, 204 Ala. 164, 85 So. 558.

■   We are, of course, mindful of the rule that the question of competency or qualification vel non of a witness to give an opinion on the subject is one for the trial court, decision of which will not be revised on appeal unless clearly erroneous. We believe, however, in the instances noted the court erred in its discretion and should have allowed the witnesses to so testify. (There may be other instances which might have escaped our notice due to the failure of appellants' brief ́ to identify the assignments of error by the proper transcript page number.  But the ones indicated are sufficient, as we see it, to require a new trial.)

■   We also think error prevailed in refusing permission to contestants to prove by Dr. Lee Whigham that in his opinion the mind of decedent had been impaired by

continued use of morphine, liquor and other stimulants and narcotics. Dr Whigham had known Mrs. Fraser for about thirty-five years, had been her family physician for the last ten years of her life until she moved to Florida, and saw her on her frequent visits back in Newville. As a physician, he was shown to have sufficient knowledge and intimate acquaintanceship to give an expert opinion on this question. Cf. Wear v. Wear, 200 Ala. 345 (13), 76 So. 111.

■ It was the contention of contestants that this long, continued and excessive use of narcotic drugs and intoxicating beverages had so impaired testatrix' mind as to render her mentally incapable of executing a legal will. There was, as observed, evidence to sustain this theory. We also think it proper to have proven by Early O. Wells, brother of testatrix, that testatrix became addicted to this excessive use of morphine as early as 1916; that she had requested him to obtain morphine for her in 1924 and in the same year her condition was such that she went to an institution to be treated for the habit. All such circumstances bear probatively on the degree with which this long and continuous use of these deleterious drugs might have affected Mrs. Fraser's mental ability to make a legal will. The court has recognized that mental incapacity on the part of the testator produced by the use of medicines may have effect to invalidate a will. Stedham's Heirs v. Stedham's Ex'r, 32 Ala. 525. And if Mrs. Fraser was using these drugs as early as 1916 and was continuing the use thereof in 1924, and this excessive use continued throughout the period until her death, as contestants' proof showed, the testimony of Mr. Wells, showing the long-past onset of this debility, would have had strong probative value for the consideration of the jury as to whether or not the degree of impairment of her mind had progressed to such an extent as to render her incapable of making a valid will in 1945 or to revive the 1945 will by the 1947 memorandum. Therefore, this malady of testatrix, its nature and duration, were legitimate subjects of inquiry under the issue of testamentary capacity. Lewis v. Martin, 210 Ala. 401, 416(53), 98 So. 635; Batson v. Batson, 217 Ala. 450(9), 117 So. 10.

■ We gather from these several adverse rulings, in the light of the objections interposed by counsel, that the learned trial court thought proof on the issue of mental capacity should be somewhat limited to the period from the execution of the 1945 will to the 1947 memorandum. This impresses us as limiting too strictly the contestants' proof on the issue. In such cases considerable latitude is accorded the parties in the matter of proof, and whatever acts, conduct or declarations, either prior or subsequent to the execution of the several documents, which bear probatively on the chronic and progressive mental impairment of the testatrix should be allowed in evidence to aid the jury in reaching a correct conclusion. Batson v. Batson, supra; Johnston v. Johnston, 174 Ala. 220, 57 So. 450; Tucker v. Tucker, 248 Ala. 602, 28 So. 2d 637.

■ We notice the author of the opinion in the Tucker case, supra, cited to this proposition several criminal cases where insanity was relied on as a defense. We have said in such cases that upon the question of insanity a wide range of evidence is allowable and that "It has become a maxim of the law that in cases where insanity is relied upon as a defense, 'Every act of the party's life is relevant to the issue.'" Hall v. State, 248 Ala. 33, 36, 26 So.2d 566, 568. That principle is here applicable to the extent of opening up the avenue of permissible examination in such cases to extend to times prior and subsequent to the date of the execution of the will and to any acts, declarations or conduct of the testatrix which would have a tendency to shed light on her mental capacity at the time of the will's execution.

■ In view of another trial, one further proposition needs to be mentioned. It was contended by contestants, and they tried to show on cross examination in order to impeach his testimony, that attorney Selden, of Daytona Beach, Florida, had occupied a dual position of representation with reference to proponents and contest-

ants. He appeared as a witness and testified in the case in order to sustain the validity of the 1945 will, vouchsafing the mental capacity of the testatrix during the years in question. His testimony was most material. He was Mrs. Fraser's regularly employed attorney. It was he who prepared the 1945 will; it was he who authorized his secretary to prepare the alleged 1946 will; and it was he who discussed with Byrd Marshall the memorandum of 1947 and the details of the revocation of the 1946 will. These material tendencies of his testimony made him an important witness for the proponents and he was subject to be impeached by the contestants on cross examination. Prior to trial he had represented the proponents in taking the depositions of witnesses in Florida. On cross examination, we think it was proper matter of impeachment for the contestants to be permitted to show that he had also accepted employment as attorney for the contestants and that he had recognized such employment in a written communication to contestants' attorney. We think this evidence, if so, would reflect on the witness' character, his sincerity and good faith, and would thereby tend to impeach his credibility. 70 C.J. 811, § 1015.

Reversed and remanded.

LIVINGSTON, C. J., and BROWN and LAWSON, JJ., concur.