178 So.2d 226

**Willis HAGHART**

v.

**Charlie COOLEY et al.**

**8 Div. 197.**

Supreme Court of Alabama.

Sept. 2, 1965.

Jesse A. Keller and Robt. M. Hill, Jr., Florence, for appellees.

Howell T. Heflin and Chas. D. Rosser, Tuscumbia, Raymond Murphy, Florence, for appellant.

SIMPSON, Justice.

This is a will contest. From a judgment in favor of contestants, proponent appeals.

The testator in this case, Jimmy Cooley, was a midget whose height was approximately 40 inches, and who was in his mid-twenties when he died. The proponent, Willis Haghart, has been in show business for over forty years. He was reared in Cullman. Jimmy was reared in Lauderdale County. Jimmy had a bone disease when he was about six years old, but went to school for some ten years at Rhodesville School in Lauderdale County.

When Jimmy was around sixteen or seventeen, Mr. Haghart went to see his parents about using Jimmy in his show. Jimmy did not go with Haghart at the time but two years later his mother and father wrote to Haghart to come and get him. In March of 1954 or 1955, Haghart went for him. During the next few years the two of them worked the circus, the arrangement being that Mr. Haghart would "work the front", advertising Jimmy as the "world's smallest man", and take up the money. Jimmy would stay inside and give lectures. Jimmy had complete charge of the show and Mr. Haghart had charge of the front.

During the first few years Jimmy and Mr. Haghart spent the winter months with Jimmy's parents in Waterloo. Later, Mr. Haghart bought a trailer which they lived in during the winter months.

In the winter of 1959–60, Mr. Haghart and Jimmy lived in Cullman, parking their trailer next to a Mr. Hayes' service station. While there Jimmy took his meals at a cafe owned by a Mr. Segler. While in Cullman Mr. Haghart talked to Jimmy about making a will. They went together to a Notary Public selected by Mr. Haghart, who drew up wills for the two of them. They made reciprocal wills, Haghart leaving everything to Jimmy and Jimmy leaving everything to Haghart. Each will contained an alternative disposition to a school for handicapped children.

About two years after the wills were executed Mr. Haghart and Jimmy bought a farm for approximately $6,000. Mr. Haghart contended that he paid the entire amount. Title was taken in their joint names. Other than a small amount of money in the bank, the one-half interest in this farm is the only property which Jimmy had at his death in 1964.

Following Jimmy's death, Mr. Haghart offered his will for probate. Jimmy's parents contested on grounds of undue influence and lack of testamentary capacity. The jury returned a verdict for contestants; Mr. Haghart appeals.

Most assignments of error concern the trial court's allowing witnesses for the contestants to testify as to Jimmy's mental capacity when it was shown that these witnesses based their opinions on acquaintance with Jimmy while he attended public school in Rhodesville. These witnesses were for the most part school teachers who had taught Jimmy over the years.

Mrs. Mamie Bevis testified that she had been a school teacher for 28 years and had taught all grades of grammar school; that she had had Jimmy in her classes. Mrs. Bevis testified that she was not able to teach Jimmy like other children; that Jimmy did not have the ability to retain school work; that he was unable to do first grade work when he was in the fifth grade, that he had been given "social promotions" which she explained was a promotion given because of a child's age and not for his ability to do school work. Jimmy was 16 years old when he was in the fifth grade. His teacher testified that he could make out some words in his reading and could print a little but could not stay on the lines. He could add a little but could not subtract, divide or multiply. This witness was of the opinion that Jimmy was definitely mentally retarded. He scored well below average on an achievement test administered to him by this witness. She further testified that Jimmy was easy to manage and easily persuaded. She felt that she could persuade him to do anything. She said that he was loved by all of the other children and was very fond of his parents.

Mr. Floyd Parker testified that he was at the time of trial the principal of Forrest Hills School in Florence. He knew Jimmy while he was principal of Rhodesville School and had taught Jimmy while there; that he had had an intimate relationship with him and that Jimmy was never able to do first grade work and that because he was unable to do school work he gave him little jobs around the school to do. This witness testified that Jimmy was greatly subject to the power of suggestion and would do just about anything anyone asked him to do.

■ Many other witnesses testified but we can see no reason to set out further testimony. As noted, appellant here objects to this whole line of testimony on the ground that only the mental condition of the testator at the time the will was executed is relevant. It is true, of course, that:

"Sanity being the normal condition of the human mind, the law presumes that every person of full age has sufficient mental capacity to make a will, and casts on the contestant, in the first instance, the burden of proving mental incapacity at the time the will was executed * * *."

It is equally true, however, that:

"* * * when the contestant has established habitual, fixed or permanent insanity, as distinguished from spasmodic or temporary insanity at a time prior to making the will, the burden of going forward with the evidence is then shifted to the proponents, and they are required to show that the will was executed during a lucid interval." Tucker v. Tucker, 248 Ala. 602, 28 So. 2d 637, citing O'Donnell v. Rodiger, 76 Ala. 222, 52 Am.Rep. 322; McBride v. Sullivan, 155 Ala. 166, 45 So. 902; Houston v. Grigsby, 217 Ala. 506, 116 So. 686.

■ We are firmly convinced that there was no error in the trial court's allowing this testimony. This testator is shown to have been retarded from an early age, both physically and mentally. It would be adopting an unrealistic view to hold that these factors have no bearing on his mental condition at the time the will in question was executed. In Price v. Marshall, 255 Ala. 447, 52 So.2d 149, the trial court excluded testimony from witnesses because he thought proof on the issue of mental capacity should be limited to the time of the execution of the will. The case was reversed, this Court noting:

"This impresses us as limiting too strictly the contestants' proof on the issue. In such cases considerable latitude is accorded the parties in the matter of proof, and whatever acts, conduct or declarations, either prior or subsequent to the execution [of the will] which bear probatively on the chronic and progressive mental impairment of the testatrix should be allowed in evi-

**358**

dence to aid the jury in reaching a correct conclusion. Batson v. Batson, supra [217 Ala. 450, 117 So. 10]; Johnston v. Johnston, 174 Ala. 220, 57 So. 450; Tucker v. Tucker, 248 Ala. 602, 28 So.2d 637."

In the case before us the trial court allowed testimony from witnesses for both proponent and contestants on the issues of mental capacity and undue influence. These witnesses were allowed to give their opinion as to the soundness of mind of the testator at the time the will was executed. This was perfectly permissible. It is well settled that the question of competency or qualification, vel non, of a witness to give an opinion on the subject (of soundness or unsoundness of mind) is one for the trial court, decision of which will not be revised on appeal unless clearly erroneous. Price v. Marshall, supra. Further, as noted in Tucker v. Tucker, supra:

"The rule is, that to authorize a non-expert to give his opinion of the existence of an unsound condition of mind, he must not only have the opportunity to form a judgment but the facts should be stated upon which it is based. The admission of opinion testimony is an exception to the general rule, and the ends of justice require in all cases where the opinion of a non-expert is admissible to show unsoundness of mind, that the facts upon which it is predicated be stated. Vaughn v. Vaughn, 217 Ala. 364, 116 So. 427, 428; Burney v. Torrey, 100 Ala. 157, 14 So. 685; Slagle v. Halsey, 245 Ala. 198, 15 So.2d 740."

We think this rule was scrupulously observed here as it related to both sides and contrary to appellant's argument it applies with equal force as to opinions of non-experts whether their testimony is to the effect that the testator was of sound or unsound mind.

Appellant describes Assignment of Error No. 11 as "probably appellant's strongest point on this appeal". The assignment urges as error the trial court's sustaining contestants' objection to the following question put to proponent's witness Segler:

"Q. During the three or four months they had winter quarters there and ate at your place, I believe you said you had opportunity to talk with Jimmy and see him, do you have from that association an opinion as to whether or not he had a judgment to know what he was doing when he made a will?"

The trial court properly sustained objection to this question. It called for a determination by this witness of the exact matter being tried to the jury, and reserved for its determination. As noted in Dersis v. Dersis, 210 Ala. 308, 98 So. 27:

"An affirmative answer would have implied the presence of all those mental actions which constitute the elements of a valid will. It called for a general opinion on the whole issue being tried by the jury. It was properly rejected."

We have carefully considered the record in this case. As stated, the will was contested on grounds of lack of testamentary capacity and undue influence. We think these issues were properly submitted to the jury. If the evidence was not sufficient to show a complete lack of testamentary capacity, it was relevant on the issue of undue influence. It was clearly shown that this testator had below normal intelligence. A general statement at 57 Am. Jur., Wills, § 356 correctly expresses the rule in such cases:

" * * * the undue influence which will invalidate a will depends to a very considerable extent on the intellectual capacity and firmness or the facility of disposition of the testator. Obviously, it requires much less influence to control the will of a person of weak mind and infirm purpose than of vigorous intellect and determined character."

Further, at § 405:

"Evidence that the testator was aged, physically sick, and mentally weak is admissible on the issue of undue influence, particularly where such circumstances concur with other circumstances pointing to undue influence, notwithstanding such evidence may be insufficient to show want of capacity to make the will."

It would unduly extend this opinion to write to other assignments of error, none of which, in our opinon, merit reversal.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.